IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S. AND GULF COAST EXPRESS PIPELINE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 21-00186 |

## COMPLAINT

Plaintiffs, Borusan Mannesmann Boru Sanayi Ticaret A.S. ("BMB") and Gulf Coast Express Pipeline LLC ("GCX") (collectively, "Plaintiffs"), by and through their counsel, hereby allege and state as follows:

## NATURE OF THE ACTION

1.  Plaintiffs challenge the denial of Protest No. 531221100010 by U.S. Customs and Border Protection ("CBP") and contest CBP's denial of administrative refunds of Section 232 tariffs on nineteen (19) entries of imported Turkish steel pipe pursuant to certain Section 232 exclusions granted by the U.S. Department of Commerce ("Commerce").

2.  CBP collected Section 232 tariffs on the imported steel pipe in accordance with Presidential Proclamations 9705 and 9772. Pursuant to Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862, Proclamation 9705 imposed 25 percent *ad valorem* tariffs on U.S. imports of certain steel products (including steel pipe from Turkey), effective March 23, 2018. *See Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the*

1

*United States*, 83 Fed. Reg. 11,625, (Mar. 15, 2018) ("Proclamation 9705"). Subsequently, through Proclamation 9772, the tariff rate for imports of steel products from Turkey was increased to 50 percent *ad valorem*, effective August 13, 2018. *Proclamation 9772 of August 10, 2018 Adjusting Imports of Steel Into the United States,* 83 Fed. Reg. 40,429 (Aug. 15, 2018). Finally, through Proclamation 9886, the tariff rate for imports of Turkish steel products was reduced back to 25 percent *ad valorem*, effective May 21, 2019. *See Proclamation 9886 of May 16, 2019 Adjusting Imports of Steel Into the United States,* 84 Fed. Reg. 23,421 (May 21, 2019).

   3. Proclamation 9705 also expressly authorized Commerce to provide relief from the Section 232 tariffs for steel products "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality," or based upon "specific national security considerations." *Proclamation 9705,* 83 Fed. Reg. at 11,627. Pursuant to this Proclamation, Commerce developed a product exclusion process through which Commerce would grant an exclusion to the Section 232 tariff if the steel product in question was not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or based upon specific national security considerations." *Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum,* 83 Fed. Reg. 12,106, 12,110 (Dep't Commerce Mar. 19, 2018) ("*Interim Final Rule*") (codified at 15 C.F.R. pt. 705, supp. 1); *see also Submission of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum,* 83 Fed. Reg. 46,026 (Dep't Commerce Sept. 11, 2018) ("*Revised Interim Final Rule*") (further developing the criteria that Commerce must consider in reviewing an exclusion request).

4.      Through the procedure established by Commerce, GCX requested and received two Section 232 exclusions for specialized X70 large diameter welded line pipe retroactive to April 24, 2018 – exclusion nos. 70956 & 70993 (the "GCX exclusions").  BMB was the U.S. importer of record on twenty (20) entries of specialized X70 large diameter welded line pipe that fall within the terms of the GCX exclusions.  Pursuant to CBP's Cargo Systems Messaging Service ("CSMS") instructions, BMB timely filed post-summary corrections ("PSCs") for nineteen (19) of the twenty (20) entries, referencing the approved GCX exclusions, and requested an administrative refund of the Section 232 tariffs paid by BMB on those entries.  CBP denied the PSCs and request for administrative refund on September 10, 2020.  BMB filed a separate protest with respect to the remaining entry, which CBP had liquidated.  CBP denied that protest, and BMB subsequently appealed to this Court.  BMB and the United States then entered into a stipulated settlement – discussed further below at paragraphs 41-43 – with respect to that single entry.

## JURISDICTION

5.      This Court has exclusive jurisdiction pursuant to 28 U.S.C. § 1581(a) as this civil action contests the denial of Plaintiffs' protest.

## THE PARTIES AND STANDING

6.      Plaintiff BMB is the importer of record of the merchandise that is the subject of this action.

7.      Plaintiff GCX is the consignee of the merchandise that is the subject to this action and obtained the Section 232 exclusions from Commerce that apply to the entries containing the merchandise that is the subject of this action.

8.      Plaintiffs jointly protested CBP's decision and requested accelerated disposition

of the protest pursuant to 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22.  Plaintiffs' protest and request was mailed on March 8, 2021.

9. The protest was timely filed with CBP at the port of entry (Corpus Christi, port code 5312).  *See* Letter to Mr. Walter De La Rosa, Port Director, Port of Corpus Christi, from Morris, Manning & Martin LLP and Hogan Lovells US LLP, "Protest by Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. and Gulf Coast Express Pipeline LLC for Entry Nos. 002-7131800-8, 002-7131969-1, 002-7131970-9, 002-7131989-9, 002-7131998-0, 002-7132050-9, 002-7132061-6, 002-7132126-7, 002-7132172-1, 002-7132173-9, 002-7132197-8, 002-7132244-8, 002-7132263-8, 002-7132283-6, 002-7132310-7, 002-7132311-5, 002-7132352-9, 002-7132381-8," Protest Number 531221100010 (Mar. 8, 2021) ("Protest Number 531221100010").

10. CBP denied the protest on April 6, 2021 but did not provide a reason for the denial.

11. Plaintiffs therefore have standing to bring this action pursuant to 28 U.S.C. § 2631(a) because BMB and GCX are the parties who filed the protest pursuant to Section 514 of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1514.

12. Defendant United States, U.S. Customs and Border Protection, is the party that denied the protest contested herein and is the statutory defendant under 28 U.S.C. § 2631(a).

13. All Section 232 tariffs have been paid on the nineteen entries.  For eighteen of the nineteen entries, liquidation has been enjoined by the Court pending the outcome of unrelated litigation, *Borusan Mannesmann Boru Sanayi v. American Cast Iron Pipe Co.*, Consol. Court No. 19-00056 (Ct. Int'l Trade), involving BMB's liability for antidumping duties on these entries pursuant the antidumping order on *Large Diameter Welded Pipe from Turkey*.  That litigation is

currently pending decision before the U.S. Court of Appeals for the Federal Circuit, Ct. No. 20-2014 (Fed. Cir.), and the resolution of the present action will have no impact on that litigation.[1]  For the remaining entry, liquidation has been extended by CBP until August 5, 2021 pursuant to BMB's request.

## TIMELINESS OF THIS ACTION

14. Pursuant to 19 U.S.C. § 1514(c)(3), protests must be filed within 180 days of either (A) liquidation, or (B) in circumstances where no liquidation has occurred, "the date of the decision as to which protest is made."  19 U.S.C. § 1514(c)(3); 19 C.F.R. § 174.12(e)(2).

15. The decision being challenged herein is CBP's final decision that nineteen of BMB's entries of specialized X70 large diameter welded line pipe do not qualify for an administrative refund of Section 232 tariffs pursuant to the GCX exclusions granted by Commerce.  The date of the challenged decision is September 10, 2020.  Plaintiffs timely filed their protest of that decision within 180 days, on March 8, 2021.  Furthermore, this action is being commenced within 180 days of the date on which Plaintiffs' protest was denied pursuant to 28 U.S.C. § 2636.

16. CBP expressly established procedures to enable parties whose Section 232 exclusions are approved *after* the goods subject to the exclusion have entered the United States to file a PSC on the entry of those goods and request an administrative refund for the Section 232 tariffs.  CBP's normal process is to issue refunds of duties, tariffs, etc. at liquidation, *see, e.g.*, 19 U.S.C. § 1505(b), but CBP established a framework via several CSMS messages to allow

---

[1] These same 18 entries are also enjoined from liquidation pending final and conclusive disposition of *Transpacific* pursuant to this Court's order in *Transpacific Steel LLC v. United States*, 474 F. Supp. 3d 1332 (Ct. Int'l Trade 2020).  Oral argument in *Transpacific* before the U.S. Court of Appeals for the Federal Circuit was held on March 18, 2021.

5

importers to file PSCs "to receive refunds prior to liquidation of an entry." *See* Commercial Customs Operations Advisory Committee (COAC) Intelligent Enforcement Subcommittee, AD/CVD Working Group Background Document (July 15, 2020) at 3 (referencing CSMS #42566154 – Section 232 and Section 301 – Extensions Requests, PSCs, and Protests (May 1, 2020).

17. CBP's authority to issue administrative refunds prior to liquidation is set forth in 19 U.S.C. § 1520(a)(4).

18. CSMS Message 42566154 states that if a "product exclusion has been granted, an importer of record (IOR) may request a refund by filing a corrective action with CBP by filing a post summary correction (PSC) for unliquidated entries." CSMS #42566154 – Section 232 and Section 301 – Extensions Requests, PSCs, and Protests (May 1, 2020).

19. BMB filed PSCs on the nineteen unliquidated entries of specialized X70 large diameter welded line pipe that are the subject of this appeal to apply the granted GCX exclusions to those entries. *See* Protest Number 531221100010 at Attachment E (approved Section 232 exclusion requests) and Attachment J (PSCs applying approved exclusions to entries). BMB also requested by letter on June 30, 2020 an administrative refund of all the previously paid Section 232 tariffs on the affected entries, following the submission of the PSCs. *See* Protest Number 531221100010 at Attachment C.

20. On September 10, 2020, CBP informed BMB's counsel via e-mail that it was denying BMB's PSCs and request for administrative refund. CBP indicated that this notice represented CBP's final decision with regard to the applicability of the GCX exclusions to these entries. CBP advised BMB that any further explanation or information would need to be provided via the protest process. *See* Protest Number 531221100010 at Attachment L.

21. Accordingly, Plaintiffs' protest challenging CBP's denial of their request for an administrative refund was timely filed, consistent with 19 U.S.C. § 1514(c)(3), within 180 days of CBP's adverse decision to that effect. This appeal is likewise timely filed because it is being filed, consistent with 28 U.S.C. § 2636, within 180 days from the date on which CBP denied Plaintiffs' protest.

## FACTUAL BACKGROUND AND MERCHANDISE AT ISSUE

22. The merchandise at issue is certain highly specialized alloy steel line pipe manufactured by Plaintiff BMB in Turkey and imported specifically for the construction of the Gulf Coast Express Pipeline ("GCX Pipeline"), a high-pressure natural gas pipeline. All of the imported steel pipe is (a) 42-inches in diameter, (b) X70 grade high-strength, (c) high-toughness, and (d) helical submerged arc-welded (together defined as "the pipe"). All of the specialized X70 pipe had been imported by the time the GCX exclusions were granted by BIS on May 22, 2020. The GCX Pipeline became operational on September 25, 2019 and is today delivering natural gas from the Waha area in West Texas to Agua Dulce near the Texas Gulf Coast.

23. American Petroleum Institute ("API") standards served as the base level for the more stringent specifications required for the GCX Pipeline. The GCX Pipeline required steel pipe that is high-strength and high-toughness manufactured to Kinder Morgan Specification M8250-A, a supplement to the 45th Edition of API 5L and 49 CFR 192-Transportation of Natural and other Gas by Pipeline. Kinder Morgan Specification M8250-A requires high tolerances in the chemical composition of the steel, tensile properties, weld seams, and out-of-roundness acceptance criteria. The imported specialized X70 pipe was manufactured consistent with these requirements.

24. As described below, GCX and BMB worked for over two years to secure Section 232 tariff exclusions for the specialized X70 pipe required for the construction of the GCX pipeline. Once BIS had granted these exclusions, on May 22, 2020 and retroactive to April 24, 2018, BMB timely sought to apply them to its imports of specialized X70 pipe and to obtain administrative refunds of the Section 232 tariffs paid on those entries. CBP denied BMB's application of the exclusions and denied its request for refunds of the paid tariffs. BMB and GCX jointly and timely protested that decision. CBP denied that protest, and this appeal timely follows.

    **A.    GCX Obtained Two BIS Exclusions for the Imported Pipe on May 22, 2020**

25. On April 24, 2018, pursuant to the Section 232 exclusion request procedures established by Commerce's Bureau of Industry and Security ("BIS"), GCX submitted two exclusion requests to BIS. These exclusion requests for the two different sizes of specialized X70 pipe described above covered the full quantity of pipe imported by BMB for the construction of the GCX Pipeline.

26. Between August 5, 2018 and February 7, 2019, the specialized X70 alloy steel pipe for the GCX Pipeline entered the United States in twenty (20) separate entries, and BMB paid Section 232 tariffs on each of these entries.

27. On April 19, 2019, BIS denied GCX's initial exclusion requests, partially on the ground that the chemistry listed in the exclusion requests was inconsistent with the non-alloy steel tariff provision under which the exclusion were being sought.

28. Based on BIS's denial, BMB and GCX reviewed the documentation concerning the chemistry of the pipe and confirmed that the imported pipe for which exclusion was sought was properly classifiable as alloy steel under note 1(f) to Chapter 72 of the Harmonized Tariff

Schedule of the United States ("HTSUS").

29.     Between May 14, 2019 and May 26, 2019, BMB submitted PSCs to CBP to amend each of the twenty entries to indicate the applicable HTSUS code, 7305.19.5000, which covers certain welded line pipe composed of alloy steel. CBP requested that BMB provide the mill test certificate for one sample entry to support BMB's identification of the merchandise in all twenty entries as alloy steel. CBP did not request mill test certificates or any other supporting documentation for the other nineteen entries. BMB promptly complied, providing the requested mill test certificate. Following the submission of the PSCs, the entries were changed to reflect the amended HTSUS code in CBP's Automated Commercial Environment ("ACE"). *See* Protest Number 531221100010 at Attachment I.

30.     After BMB filed the PSCs amending the HTSUS code on the pipe entries subject to this appeal, GCX similarly amended the HTSUS code in its exclusion requests and resubmitted them to BIS (linking the refiled requests to GCX's initial April 24, 2018 submissions). GCX resubmitted its exclusion requests several times between June and September 2019 under the updated HTSUS code, but BIS was unable to post them to its portal. GCX subsequently was informed that this was because, as part of the Section 232 exclusion request process, CBP reviewed the exclusion requests employing an algorithm to test the physical and chemical characteristics of the covered product(s) against the HTSUS code under which exclusion is sought. This algorithm screening erroneously rejected GCX's exclusion requests on the false predicate that the products did not qualify as alloy steel.[2] At that point,

---

[2]     This algorithm has (or had) rules for determining whether a product was "alloy steel." Those rules conflict(ed) with the HTSUS. The HTSUS provides at Chapter 72, general note 1(f), that if a steel product meets or exceeds any one of several chemical content thresholds, then that product is considered "alloy" for U.S. Customs purposes. In other words, according to the

9

CBP (through its algorithm) had reviewed GCX's exclusion requests – submitted both under the alloy HTSUS provision and the non-alloy HTSUS provision for the specialized X70 pipe at issue – and the agency had rejected GCX's exclusion requests under both HTSUS codes.  This was illogical, as in accordance with the HTSUS, steel pipe must be either alloy or non-alloy.  CBP, on the other hand, claimed that it was neither.

31. To overcome this hurdle created by CBP's algorithm and after reviewing BMB's mill test certificates, BIS instructed GCX in March 2020 to change the manner in which the minimum niobium content was identified on the exclusion requests.  GCX complied and changed the minimum niobium content identified on its exclusion requests from 0.02 percent to 0.065 percent, a simple average of the niobium content across the imported pipe.  The exclusion requests thus contain the following notation:  "Per BIS's instruction, the identified minimum niobium content level is a simple average across the relevant pipe."  *See* Protest Number 531221100010 at Attachment E (providing the exclusion requests).  Following its consultations with BIS, on March 12, 2020 and March 16, 2020, GCX again resubmitted the exclusion requests.  BIS then posted the GCX exclusion requests to its portal without CBP questioning the HTSUS classification.

32. On May 22, 2020, BIS granted the GCX exclusion requests retroactive to April 24, 2018.

---

HTSUS, it is irrelevant to the classification analysis which of the chemical thresholds is met—that is, a steel product is an alloy steel product irrespective of whether it is a niobium alloy, a molybdenum alloy, or some other qualifying alloy.  Notwithstanding, CBP's algorithm appears to have incorrectly mandated that an alloy steel product for which a Section 232 exclusion was sought needed to be "alloy" on the basis of the product's exceeding of a single, unique chemical threshold.  This additional hurdle imposed by CBP's algorithm on Section 232 exclusion requestors is fundamentally inconsistent with the HTSUS and CBP's own tariff classification guidance.

**B.     CBP Erroneously Denied BMB's Assertion of The GCX Exclusions Against the Imported Pipe and Unlawfully Refused to Issue Administrative Refunds of the Section 232 Tariffs**

33.     Pursuant to CBP's published CSMS messages, the importer of record of the specialized X70 pipe, BMB, submitted PSCs to CBP between June 18-19, 2020.  BMB asserted the granted exclusions and requested administrative refunds of the Section 232 tariffs that it paid on the imported pipe.  In filing these PSCs, and pursuant to CBP's request, BMB provided the mill test certificates for each of the nineteen entries subject to this appeal.

34.     In addition, to demonstrate that the simple average of niobium across all heats met the exclusion request parameters, Plaintiffs subsequently provided CBP (accompanying their protest) with a heat-by-heat analysis and calculation of the simple average of the niobium content across all heats as an attachment to its protest.  *See* Protest Number 531221100010 at Attachment H.

35.     On June 30, 2020, the CBP import specialist reviewing the PSCs advised BMB that BMB needed to file a request for administrative refund in order to receive the requested refunds of the Section 232 tariffs prior to liquidation.  BMB complied and filed a written request for administrative refund for all of the entries, enabling CBP to refund the tariffs prior to liquidation.  *See* 19 C.F.R. § 24.36(a) ("When it is found upon, or ***prior to, liquidation*** or reliquidation of an entry or reconciliation that a refund of excessive duties, taxes, fees or interest (at the rate determined in accordance with § 24.3a(c)(1)) is due, ***a refund shall be prepared in the name of the person to whom the refund is due***. . . . (ii) In the case of a refund of duties, taxes, fees or interest made ***prior to liquidation***, such a refund will include only principal amounts and not any interest thereon.") (emphasis added).

36.     On August 20, 2020, in response to an inquiry from BMB's counsel about the status of the PSCs and the administrative refund, a CBP representative initially explained to

counsel that the Base Metals Center had reviewed and processed the PSCs, and that CBP was currently working to process the refunds.  The CBP representative contacted BMB's counsel later that same day to revise her earlier statement and indicated instead that the PSCs were still being processed.  The CBP representative also reassured counsel that the processing should not take very long, and that the 232 tariff refunds would be tendered after the PSCs were processed.  *See* Protest Number 531221100010 at Attachment M.

37. On September 1, 2020, CBP's representative explained that she had misinterpreted the prior information shared with BMB.  In fact, the PSCs were not being processed but instead were still being reviewed to assess whether the GCX exclusions applied to the entries for which PSCs were filed.  CBP's representative further explained that since the PSCs were still being reviewed and no determination had yet been made, there was no guarantee that a refund would be approved in this case.  *See* Protest Number 531221100010 at Attachment M.

38. On September 4, 2020, another CBP representative informed counsel for BMB via telephone that CBP intended to reject the PSCs and deny the request for refund of previously paid section 232 tariffs because (1) the mill test certificates were allegedly not submitted with the entries, and (2) certain unspecified chemistries stated in the approved BIS exclusions allegedly did not match the submitted mill test certificates.  Notwithstanding BMB's repeated requests for additional information and clarification in written or oral form, the CBP representative refused to provide any further details.  BMB offered to supply the Base Metal Center with the entry summary package and mill test certificates that were submitted previously with the PSCs to demonstrate that the products meet the parameters of the granted exclusion requests.  In response, the Base Metal Center responded that it already had this information.  *See* Protest

Number 531221100010 at Attachment M.

39. On September 10, 2020, in response to a request to schedule a meeting to discuss this perplexing situation, a CBP representative informed counsel via electronic mail:

> Over this week, I have had additional opportunities to discuss with my staff their review of the PSC's and their determination. I continue to support and stand by this determination and the discussion . . .  We will be moving forward to process the PSC's today. . . . If you'd like to further explain or provide additional information, you may do so via the protest process. Your additional information can be reviewed and considered at that time.

Protest Number 531221100010 at Attachment L.

40. Shortly after CBP's decision was e-mailed directly and plainly to BMB's counsel, CBP confirmed the finality of its decision through the following actions: (1) denied the PSCs filed by BMB in ACE; (2) changed the HTSUS code on sixteen (16) of these nineteen (19) entries from the alloy steel HTSUS code back to the non-alloy HTSUS code; and (3) reapplied the Section 232 tariff to sixteen (16) of these nineteen (19) entries in ACE.  As of the filing of this complaint, the other three entries subject to this appeal still appear in ACE classified under the alloy steel HTSUS code.  Plaintiffs have made numerous attempts to contact CBP regarding the status of the refunds for these three entries, but no response has been received and no reimbursement has been received.

        C.        **The Court's Treatment of BMB's 20th Entry of the Imported Pipe**

41. On November 4, 2020, the Court approved a stipulated judgment on an agreed statement of facts pertaining to one of the twenty entries of the specialized X70 pipe for the GCX Pipeline.  This entry, unlike the other nineteen entries for which liquidation has been suspended pursuant to the litigation described above in paragraph 14, had liquidated under the applicable alloy HTSUS code on October 11, 2019.  BMB protested the liquidation of this entry, against

which the Section 232 tariff had been assessed, on the ground that it was subject to a pending Section 232 exclusion request. CBP denied that protest, and BMB appealed to the Court in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, CIT Ct. No. 20-00145.

42. Following the commencement of the litigation, CBP again reviewed the GCX exclusions and the BMB mill test certificate applicable to the entry. CBP and the U.S. Department of Justice subsequently agreed to settle that litigation pursuant to a stipulated judgment to the effect that (i) the merchandise in question was line pipe composed of ***alloy*** steel, and (ii) the merchandise was not covered by the Section 232 tariff pursuant to the GCX exclusions. *See Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, CIT Ct. No. 20-00145, ECF No. 14 (Nov. 4, 2020) (provided with Protest Number 531221100010 at Attachment N).

43. Critical for purposes of this appeal, the specialized X70 alloy pipe at issue in the stipulated judgment between the United States and BMB is ***identical*** to the alloy pipe in the nineteen entries subject to this action. That is, the pipe imported in that entry is part of the same order, produced to the same physical and chemical tolerances as the pipe imported on the nineteen entries subject to this appeal. There is, therefore, no factual basis for CBP to afford different treatment to the pipe subject to the stipulated judgment and the pipe subject to this appeal.

### D. Plaintiffs Timely Protested CBP's Refund Denial

44. On March 8, 2021, Plaintiffs jointly filed Protest Number 531221100010 and explained that CBP's denial of the requested administrative refunds in relation to the nineteen entries of specialized X70 pipe was unlawful because the pipe imported in the nineteen entries was fully within the parameters of the BIS-approved GCX exclusions. Plaintiffs submitted

voluminous documentary evidence in support of their protest, including: (1) the BIS-approved GCX exclusions; (2) the mill test certificates previously submitted to CBP with BMB's PSCs; (3) a heat-by-heat analysis of the niobium content of the specialized X70 pipe; and (4) a "side-by-side" comparison demonstrating that the imported pipe fits within the parameters of the GCX exclusions.  *See* Protest Number 531221100010 at Attachment D (mill test certificates), Attachment E (Section 232 exclusion requests), Attachment K (niobium content analysis), and Attachment H (side-by-side comparison of exclusion request and mill test certificates).  Finally, Plaintiffs explained that CBP had stipulated to the Court that an entry comprising the same specialized X70 pipe manufactured and imported by BMB that was imported in the nineteen entries at issue in the protest (and in this appeal) met the parameters of the approved GCX exclusions.  Accordingly, it was entirely irrational, arbitrary, and capricious for CBP to have refused BMB's request for administrative refunds in relation to separate entries containing the same pipe.

45. Protest Number 531221100010 was denied on April 6, 2021.  No reason was provided for the denial.

46. This appeal followed.

## STATEMENT OF CLAIM

### Count I

47. Plaintiffs incorporate by reference paragraphs 1-46 of this Complaint.

48. CBP's denial of Plaintiffs' protest was unlawful because the nineteen entries of pipe fit squarely within the parameters of the approved GCX exclusions.  This is evidenced by the previous determination by CBP (and DOJ) with respect to the 20th entry of the same pipe for the GCX Pipeline.  The approved GCX exclusions were requested and approved specifically for

the GCX Pipeline, and the pipe that was imported for the GCX Pipeline project comports with all of the characteristics and specifications listed in the approved GCX exclusions. CBP thus had no legal or factual basis for denying BMB's request for an administrative refund of the Section 232 tariffs paid by BMB. Accordingly, Plaintiffs are entitled to the benefits of the approved GCX exclusions and to receive an administrative refund of the Section 232 tariffs prior to liquidation plus interest as provided by law upon liquidation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court render judgment against Defendant, order (i) the refund, prior to liquidation, of Section 232 tariffs paid on these nineteen entries, and (ii) the payment at the time of liquidation of applicable interest thereon pursuant to 19 C.F.R. § 24.36, and grant such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

| | |
|---|---|
| /s/ Julie C. Mendoza | /s/ Jonathan T. Stoel |
| Julie C. Mendoza | Jonathan T. Stoel |
| Donald B. Cameron, Jr. | Jared R. Wessel |
| R. Will Planert | Nicholas Laneville |
| Brady W. Mills | |
| Mary S. Hodgins | **HOGAN LOVELLS US LLP** |
| Edward J. Thomas III | Columbia Square |
| Jordan L. Fleischer | 555 Thirteenth Street, NW |
| | Washington, DC 20004 |
| **MORRIS, MANNING & MARTIN LLP** | (202) 637-6634 |
| 1401 Eye Street, NW, Suite 600 | jonathan.stoel@hoganlovells.com |
| Washington, D.C. 20005 | |
| jmendoza@mmmlaw.com | *Counsel to Gulf Coast Express Pipeline, LLC* |
| (202) 216-4817 | |

*Counsel to Borusan Mannesmann Boru Sanayi ve Ticaret A.S.*

Dated: April 22, 2021