UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| | : | |
| BORUSAN MANNESMANN BORU | : | |
| SANAYI VE TICARET A.S. AND GULF | : | |
| COAST EXPRESS PIPELINE, LLC, | : | |
| | : | |
| Plaintiffs, | : | Court No. 21-00186 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

BACKGROUND AND FACTS ................................................................................2

    A.  Section 232 and Product Exclusions .........................................................2

    B.  CBP's Role Regarding Section 232 Exclusion Claims .............................3

    C.  The Entries At Issue ..................................................................................5

        1.  Eighteen of the Nineteen Subject Entries Are Suspended................5

        2.  The Remaining Entry Is Also Unliquidated .....................................7

ARGUMENT ....................................................................................................8

I.   Plaintiffs' Protest Is Premature And Defective ...............................................8

    A.  Plaintiffs' Protest Concerns the Tariff Classification of the Merchandise ............10

    B.  The Date of Liquidation Applies .............................................................14

    C.  Plaintiffs Are Not Entitled To Pre-Liquidation Refunds.......................17

CONCLUSION ..............................................................................................20

## **TABLE OF AUTHORITIES**

### **Cases**

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States,*
  Consol. Ct. No. 19-00056 (Ct. Intl. Trade)
  Consol. Court No. 2020-2014 (Fed. Cir. 2021) ............................................................ 6,

*Corley v. United States,*
  556 U.S. 303 (2009) ............................................................................................... 11

*Dart Export Corporation v. United States,*
  43 CCPA 64, C.A.D. 610 (1956) ............................................................................ 16

*Dow Chemical Co. v. United States,*
  10 CIT 550, 647 F. Supp. 1574 (1986) .................................................................. 16

*Ford Motor Co. v. United States,*
  435 F. Supp. 2d 1324, 30 C.I.T. 788 (Ct. Int'l Trade 2006) ............................. 14, 19

*Splane v. West,*
  216 F.3d 1058 (Fed. Cir. 2000) .............................................................................. 11

*Transpacific Steel LLC v. United States,*
  CIT No. 19-00009 ............................................................................................ *passim*

### **Harmonized Tariff Schedule of the United States**

Chapter 73 ............................................................................................................... 11

Chapter 99 ................................................................................................................. 2

Heading 9903.80.01 ........................................................................................ *passim*

Heading 9903.80.02 ........................................................................................ *passim*

### **Statutes**

19 U.S.C. § 1500 ..................................................................................................... 19

19 U.S.C. § 1500(b) ...................................................................................... 12, 13, 16

19 U.S.C. § 1500(c) ............................................................................................ 12, 16

19 U.S.C. § 1500(d) ...................................................................................... 12, 13, 16

19 U.S.C. § 1504 ................................................................................................18

19 U.S.C. § 1504(a)(1) ....................................................................................7, 13

19 U.S.C. § 1504(b) .....................................................................................7, 13, 18

19 U.S.C. § 1504(d) .........................................................................................7, 13

19 U.S.C. § 1505(a) ........................................................................................*passim*

19 U.S.C. § 1505(b) ......................................................................................17, 18

19 U.S.C. § 1505(c) ..........................................................................................18

19 U.S.C. § 1514 ..............................................................................................19

19 U.S.C. § 1514(a) ...........................................................................................8, 16

19 U.S.C. § 1514(a)(2) .............................................................................8, 9, 10, 12

19 U.S.C. § 1514(a)(3) .............................................................................8, 9, 10, 11

19 U.S.C. § 1514(c)(1)(A) .................................................................................17, 19

19 U.S.C. § 1514(c)(1)(B) .................................................................................16, 19

19 U.S.C. § 1514(c)(3) .............................................................................8, 9, 10, 14

19 U.S.C. § 1514(c)(3)(A) .................................................................................9, 15

19 U.S.C. § 1514(c)(3)(B) ....................................................................................14

19 U.S.C. § 1520(a)(4) .......................................................................................17, 18

19 U.S.C. § 1520(d) ............................................................................................15

19 U.S.C. § 1862(b) ..............................................................................................2

19 U.S.C. § 1862(c)(1)(A) .......................................................................................2

19 U.S.C. § 2483 ..................................................................................................2

28 U.S.C. § 1581(a) ..................................................................................1, 7, 17, 18

Section 232 of the Trade Expansion Act of 1962 ...............................................*passim*

Section 515 of the Tariff Act of 1930 .......................................................................8

Section 520(d) of the Tariff Act of 1930 ...................................................................15

## Rules and Regulations

15 C.F.R. § 705, Supp.1(c)(2) ............................................................................3

15 C.F.R. § 705, Supp.1(h)(3) ............................................................................3

19 C.F.R. § 159.1...............................................................................13, 16, 19

19 C.F.R. § 159.12 ..............................................................................................7

19 C.F.R. § 159.12(b) .........................................................................................7

19 C.F.R. § 159.12(f) ..........................................................................................7

19 C.F.R. § 174.12(e)(2).....................................................................................15

*Adjusting Imports of Steel Into the United States (Pres. Proc. No. 9705),*
   83 Fed. Reg. 11,625, Annex (U.S. Note 16(d)) (Mar. 8, 2018) ...............2, 3, 5

*Adjusting Imports of Steel Into the United States (Pres. Proc. No. 9772),*
   158 Fed. Reg. 40,429, (Aug. 10, 2018), ...........................................2, 5, 6, 7

*Adjusting Imports of Steel Into the United States (Proclamation 9886),*
   84 Fed. Reg. 23,421, 23, 422 (May 16, 2019) ..........................................6

USCIT R. 12(b)(1)...............................................................................................1

## Other Authorities

Pension Protection Act of 2006,
   PL 109–280, August 17, 2006, 120 Stat 780 .............................................18

Business Rules and Process Document for Automated Commercial Environment Entry
   Summary (Version 10.5) March 2021 PBRB #1396-0321
   https://www.cbp.gov/sites/default/files/assets/documents/2021-
   Mar/ACE%20Entry%20Summary%20Business%20Rules%20V10.5_0.pdf.................4

U.S Customs and Border Protection, Cargo Systems Messaging Service,
   CSMS # 39633923 UPDATE: Submitting Imports of Products Excluded from Duties
   on Imports of Steel or Aluminum (September 03, 2019)
   https://content.govdelivery.com/accounts/USDHSCBP/bulletins/25cc403.................4

U.S Customs and Border Protection, Cargo Systems Messaging Service,
   CSMS #42566154 - Section 232 and Section 301 – Extensions Requests, PSCs,
   and Protests (May 1, 2020)

iv

https://content.govdelivery.com/accounts/USDHSCBP/bulletins/25cc403 .................4

*Exaction*, Merriam Webster's online dictionary
    https://www.merriam-webster.com/dictionary/exaction .............................................15

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| | : | |
| BORUSAN MANNESMANN BORU | : | |
| SANAYI VE TICARET A.S. AND GULF | : | |
| COAST EXPRESS PIPELINE, LLC, | : | |
| | : | |
| Plaintiffs, | : | Court No. 21-00186 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

Defendant, United States (the Government), submits this reply memorandum in support of its motion, pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade, to dismiss this action for lack of subject matter jurisdiction.

Plaintiffs, Borusan Mannesmann Boru Sanayi Ticaret A.S. (Borusan) and Gulf Coast Express Pipeline LLC, seek to invoke jurisdiction of this Court under 28 U.S.C. § 1581(a) challenging the denial of a protest. Because plaintiffs filed a premature protest that does not give rise to jurisdiction under § 1581(a), this action must be dismissed.

Plaintiffs seek to challenge, prematurely, U.S. Customs and Border Protection's (CBP) denial of Borusan's request for pre-liquidation administrative refunds based on post-summary corrections (PSCs) claiming the benefit of two exclusions, approved by the U.S. Department of Commerce (Commerce), which plaintiffs believe cover the merchandise in the subject entries. Borusan entered the merchandise without claiming an exclusion from Section 232 duties and later sought to apply the exclusions through the

filing of PSCs.  Compl. ¶ 4.  Plaintiffs concede that the subject entries are all

unliquidated.  Compl. ¶ 1.  As a result, the protest is premature and invalid, and this case

must be dismissed for lack of subject matter jurisdiction.

## BACKGROUND AND FACTS

Our opening brief set forth a discussion concerning Section 232 duties and the

general facts of this case, however, we wish to provide the following relevant information

applicable to plaintiffs' entries and claims with respect to Section 232.

### A.  Section 232 and Product Exclusions

Section 232 of the Trade Expansion Act of 1962 authorizes the Secretary of

Commerce to conduct comprehensive investigations to determine the effects of imports

of any article on the national security of the United States.  19 U.S.C. § 1862(b).

Following an investigation, the President may concur with the Secretary's

recommendations, and, if necessary, take action to adjust the imports of an article and its

derivatives.  19 U.S.C. § 1862(c).  Such adjustments may be made by adding or

modifying specific headings to chapter 99 of the Harmonized Tariff Schedule of the

United States (HTSUS).  *See* 19 U.S.C. § 2483.  As relevant to this case, the President

modified subchapter III of chapter 99 of the HTSUS by inserting new note 16 and two

new tariff provisions (among others), headings 9903.80.01 and 9903.80.02.  *See*

Presidential Proclamation 9705 of March 8, 2018, *Adjusting Imports of Steel Into the*

*United States*, 83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018) (heading 9903.80.01) and

Presidential Proclamation 9772 of August 10, 2018, *Adjusting Imports of Steel Into the*

*United States*, 158 Fed. Reg. 40,429, 40,430 (Aug. 15, 2018) (heading 9903.80.02).

The President also authorized Commerce to grant exclusions from these tariffs for merchandise "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality," or "based upon specific national security considerations," if "a request for exclusion is made by a directly affected party located in the United States."  Proc. 9705 at clause 3.  If Commerce approves an exclusion request, that exclusion is product specific and limited to the individual or organization that submitted the specific exclusion request.  15 C.F.R. Pt. 705, Supp. 1(c)(2).  As a result, both headings 9903.80.01 and 9903.80.02 specify that they do not apply to merchandise covered by "any exclusions that may be determined and announced by the Department of Commerce."

**B.  CBP's Role Regarding Section 232 Exclusion Claims**

In order to apply an approved Section 232 exclusion, the importer must "provide any information that may be required, and in such form, as is deemed necessary by CBP." *Proclamation 9705, Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625, Annex (U.S. Note 16(d)) (Mar. 8, 2018) (Proclamation 9705).  This information enables "CBP to determine whether an import is within the scope of an approved exclusion request."  15 C.F.R. Pt. 705, Supp. 1(h)(3).

CBP notified the trading community through CBP's Cargo Systems Messaging Service (CSMS) of the specific procedures to be followed in order to apply an exclusion to an entry.  The CSMSs noted that Section 232 product exclusions determined and announced by Commerce may be retroactive for unliquidated entries and for entries that are liquidated but where the liquidation is not final because the protest period has not expired.  Consistent with the shared responsibility between the importing community and

CBP, the agency advised importers how they may provide corrected information for such entries, subsequent to entry but prior to liquidation becoming final.

Specifically, for unliquidated entries, importers may file PSCs, in accordance with the rules and procedures as outlined in CBP's Business Rules and Process Document for Automated Commercial Environment Entry Summary (Version 10.5) March 2021 PBRB #1396-0321.[1]  Because entries must generally be liquidated within one year of the date of entry (unless liquidation is lawfully extended, suspended, or scheduled for an earlier date than the first anniversary of the entry), PSCs must typically be filed by the earlier of 300 days from the date of entry or fifteen days prior to the scheduled date of liquidation. *Id.*  Where necessary to timely file a PSC to correct an entry summary prior to liquidation based on a retroactive Section 232 exclusion, or where necessary to await the outcome of Commerce's decision on a pending retroactive exclusion request, importers are reminded of the option to request an extension of liquidation.  For liquidated entries, importers are reminded that they may file timely protest to seek the reliquidation of such entries as are covered by retroactive Section 232 exclusions approved by Commerce.  *See* CBP CSMS #42566154.[2]

At no point, however, does CBP's guidance make any mention of *pre-liquidation* administrative refunds.  *See generally* CBP CSMS nos. 42566154 and 39633923.[3]

_____

[1]  *Available at*, https://www.cbp.gov/sites/default/files/assets/documents/2021-Mar/ACE%20Entry%20Summary%20Business%20Rules%20V10.5_0.pdf.

[2]  *Available at*, https://content.govdelivery.com/accounts/USDHSCBP/bulletins/289820a.

[3]  *Available at*, https://content.govdelivery.com/accounts/USDHSCBP/bulletins/25cc403.  Although CSMS 42566154 notes that "an importer may submit a PSC to request a refund on the entry summary(ies)," this does not mean that such refunds are issued prior to liquidation. Rather, if CBP agrees that the retroactive exclusion claimed by a PSC applies, then CBP

Indeed, CBP's guidance solely concerns the operational procedures for timely correcting entries covered by retroactive Section 232 exclusions before the finality of liquidation precludes any further amendments.  Thus, for unliquidated entries, CBP's guidance reminds importers to ensure that CBP has all of the necessary information to make a fully informed final decision at liquidation by timely filing PSCs to ensure that CBP has time to evaluate all relevant information prior to the scheduled liquidation date or, if there is insufficient time before the scheduled liquidation date, then to ensure that CBP has all of the relevant information on timely protest.

### C.  The Entries At Issue

There is no dispute here that all of plaintiffs' nineteen subject entries in this case are unliquidated.

### 1.    Eighteen of the Nineteen Subject Entries Are Suspended

Eighteen of the subject entries in this case are suspended as they are also subject to the litigation in *Transpacific Steel LLC v. United States*, CIT No. 19-00009, because the merchandise in these eighteen entries was entered at the 50 percent *ad valorem* Section 232 duty rate provided in heading 9903.80.02, HTSUS, for imports of steel articles from Turkey, the lawfulness of which was the subject of the legal challenge in *Transpacific*.[4]  The liquidation of these eighteen entries is suspended per the Court's

---

will liquidate the entries without assessing Section 232 duties and the importer will receive a refund of the duties plus lawful interest upon liquidation.

   [4]  Proclamation 9705 established a 25 percent tariff on imports of certain steel products under HTSUS heading 9903.80.01.  *Proclamation 9705, Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625, 11,627 clause 3 (Mar. 8, 2018).  Subsequently, Proclamation 9772 was issued, which increased the Section 232 tariffs on imports of steel products from Turkey entered on and after August 13, 2018 from 25 to 50 percent, under new HTSUS heading 9903.80.02.  *See Proclamation 9772 of August 10, 2018, Adjusting Imports of Steel Into the United States*, 158 Fed. Reg. 40,429 (Aug. 15, 2018) (Proclamation 9772).  The 50 percent tariff under heading 9903.80.02

September 15, 2020 order in *Transpacific*, which enjoined liquidation of the unliquidated

subject entries during the pendency of that litigation, including any appeals.[5]

The *Transpacific* litigation has not concluded.  The Court of International Trade

issued a decision that invalidated the 50 percent tariff rate.  The Government appealed

and, on July 13, 2021, the Court of Appeals for the Federal Circuit reversed.  The time to

petition for a writ of *certiorari* has not expired.  Accordingly, liquidation remains

suspended for the subject entries in that case, which includes eighteen entries in this case.

In addition, as plaintiffs note, the liquidation of these eighteen entries is also suspended

pursuant to separate and unrelated antidumping duty proceedings in *Borusan*

*Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, Consol. Ct. No. 19-00056 (Ct.

Intl. Trade) and Consol. Court No. 2020-2014 (Fed. Cir. 2021).  Pls.'s Mem. at 9-10 and

n.3.  Once both suspensions are removed, CBP will have six months after receiving

_____

was subsequently removed by *Proclamation 9886 of May 16, 2019, Adjusting Imports of
Steel Into the United States*, 84 Fed. Reg. 23,421, 23,422 (May 16, 2019), effective for
subject merchandise entered on and after May 21, 2019.

  [5]  Following the CIT decision in *Transpacific*, CBP refunded to Borusan half of
the Section 232 estimated duties deposited by Borusan for these eighteen entries under
the 50 percent *ad valorem* rate under heading 9903.80.02, HTSUS, by changing the
relevant entry summary lines from classification under the 50 percent *ad valorem* rate
under heading 9903.80.02, HTSUS, to classification under the 25 percent *ad valorem* rate
under heading 9903.80.01, HTSUS, and manually processing the pre-liquidation
administrative refunds.  However, such pre-liquidation administrative refunds involve a
manual and labor-intensive process that is very different from the agency's usual
automated process for issuing refunds after liquidation.  And while such pre-liquidation
refunds were required to implement's the court's order in *Transpacific* (which suspended
liquidation but denied the Government's motion to stay the order to refund pending
appeal), this is not a usual procedure.  After the Court of Appeals for the Federal Circuit
reversed and remanded the CIT's judgment in *Transpacific*, for the unliquidated Borusan
entries we requested correction of the entry summaries back to classification under the 50
percent *ad valorem* rate under heading 9903.80.02, HTSUS, and to redeposit the refunded
Section 232 estimated duty deposits.  A hearing on this matter is scheduled for November
22, 2021.

notice of the removal in which to liquidate the entries, unless liquidation is extended
under 19 U.S.C. § 1504(b).  *See* 19 U.S.C. § 1504(d).

       2.    <u>The Remaining Entry Is Also Unliquidated</u>

The nineteenth entry, no. 002-7131800-8, was entered on August 5, 2018, at the
25 percent *ad valorem* rate under heading 9903.80.01, HTSUS (prior to the effective date
imposed by Proclamation 9772 for the 50 percent *ad valorem* rate under heading
9903.80.02, HTSUS), and, therefore, is not subject to the *Transpacific* litigation.
Liquidation is not currently suspended for this entry, but liquidation has been extended
until August 5, 2022.  Specifically, the liquidation of this entry was extended three times:
first, on July 26, 2019; second, on November 12, 2019; and third, on November 13, 2019.

In accordance with 19 U.S.C. § 1504(b), notice of each extension was provided
"in such form and manner (which may include electronic transmittal) as the Secretary
[has] by regulation prescribe[d]" – by posting the official notice of extension and reasons
therefor on www.cbp.gov, *see* 19 C.F.R. § 159.12(b).  Consistent with 19 C.F.R.
§ 159.12, each extension extended the one-year statutory period for liquidation under 19
U.S.C. § 1504(a)(1), for an additional one-year period per extension.  Thus, with three
one-year extensions, the original one-year period for the liquidation of this entry has been
extended by three years, to August 5, 2022.  19 U.S.C. § 1504(b) and 19 C.F.R.
§ 159.12(f).

The first extension was at CBP's direction.  The last two extensions of liquidation
were both granted by CBP at the request of the importer.  Accordingly, CBP has until
August 5, 2022, to make its final determination concerning the liquidation of this entry.
While the liquidation period for this entry is currently extended (rather than suspended as

for the other eighteen entries), this distinction is immaterial for purposes of the

Government's motion to dismiss in this case.  Because it is undisputed that all nineteen

subject entries were unliquidated at the time that plaintiffs filed their protest contesting

the classification and rate and amount of duty applicable to these entries, the protest was

premature and invalid for all entries.[6]

## ARGUMENT

### I.    Plaintiffs' Protest Is Premature And Defective

Plaintiffs claim jurisdiction under 28 U.S.C. § 1581(a), *see* Compl. ¶ 5, which

grants the Court exclusive jurisdiction over "any civil action commenced to contest the

denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  28

U.S.C. § 1581(a).  A valid protest must contest a decision of Customs falling into one of

seven enumerated categories in 19 U.S.C. § 1514(a).  Relevant here, the nature of CBP's

decision is contended to fall into either section 1514(a)(2) or (3): "(2) the classification

and rate and amount of duties chargeable" or "(3) all charges or exactions of whatever

character within the jurisdiction of the Secretary of Treasury."  Additionally, section

1514(c)(3) provides that "A protest of a decision, order or finding described in subsection

(a) of this section shall be filed …within 180 days after but not before—(a) date of

liquidation or reliquidation, or (b) in circumstances where subparagraph (A) is

inapplicable, the date of the decision as to which protest is made."

---

[6]  Plaintiffs refer to a twentieth entry that was resolved by a stipulated judgment. That entry is not at issue here and cannot be relied upon in this case.  Pls.'s Mem. at 12-14.  It is well-established that litigation resolved by judgment based upon a stipulated statement of facts does not apply to any entries beyond the specific entries covered by such judgment.

Plaintiffs argue that the true nature of their protest in this case does not concern the classification and rate and amount of duties chargeable for the unliquidated subject entries, which is protestable under 19 U.S.C. § 1514(a)(2), but rather that the protest instead concerns CBP's "charges or exactions" for the unliquidated subject entries, which would be protestable under 19 U.S.C. § 1514(a)(3).  Pls.'s Mem. at 16-19.  Plaintiffs also argue that the date of liquidation for purposes of the requirements of 19 U.S.C. § 1514(c)(3) is inapplicable because, in their view, the protest allegedly concerns a "charge or exaction," which plaintiffs claim is represented by CBP's refusal to issue pre-liquidation refunds of Borusan's estimated duty deposits for the unliquidated subject entries.

Plaintiffs are incorrect on all counts.  As explained below, plaintiffs assert that the HTSUS classification should be changed, to reflect retroactive exclusions determined and announced by Commerce that plaintiffs believe cover the merchandise in these entries. However, the applicable classification, duty rate, and amount, are not finally determined by CBP until liquidation.  Moreover, CBP did not impose any charge or exaction for the subject merchandise.  Plaintiffs' claim that CBP's refusal to issue pre-liquidation refunds of estimated duty deposits represents an exaction fails because CBP did not impose any charge or exaction for the subject merchandise but rather only collected, at or close to the time of entry, the estimated duty deposits required based on the HTSUS tariff provision declared by the importer, as the statute requires for all consumption entries.  *See* 19 U.S.C. § 1505(a).  Accordingly, 19 U.S.C. § 1514(c)(3)(A) applies, which in turn requires that the importer wait until after liquidation to protest.

Because none of the entries at issue have been liquidated, plaintiffs' protest is premature and invalid under 19 U.S.C. § 1514(c)(3)(A).

**A.      Plaintiffs' Protest Concerns the Tariff Classification of the Merchandise**

The basis for plaintiffs' protest with respect to all nineteen unliquidated subject entries is that the proper classification and applicable duty rate for the imported merchandise in these entries is not provided under headings 9903.80.02 or 9903.80.01 (depending on the date of entry) of the HTSUS, because plaintiffs believe that the imported merchandise in these entries is covered by two retroactive exclusions.  Plaintiffs claim that the duty rates provided in headings 9903.80.02 and 9903.80.01 do not apply, and that the merchandise is not properly classified under these headings.  Thus, the protest seeks to change the classification and applicable duty rate for the merchandise in these entries and challenges the "classification and rate and amount of duties chargeable" for the subject entries, which is protestable under 19 U.S.C. § 1514(a)(2).

Plaintiffs contend that rather than protesting "the classification and rate and amount of duties chargeable" under § 1514(a)(2), they instead protested "charges or exactions" under § 1514(a)(3).  However, the protest seeks to change the applicable HTSUS classification for the subject entries and, operationally, the only way that CBP could approve the protest would be to change the tariff classification to account for the claimed exclusions.

Here, Borusan imported merchandise based on entry documentation providing for classification under heading 9903.80.02, HTSUS, which provides for a duty rate of 50 percent *ad valorem* or, depending on the date of entry, under heading 9903.80.01, HTSUS, which provides for a duty rate of 25 percent *ad valorem*.  Pursuant to 19 U.S.C.

§ 1505(a), Borusan was required to deposit the estimated duties at these respective rates under headings 9903.80.02 or 9903.80.01.  Borusan then filed PSCs seeking to change the applicable HTSUS classification provision (and attendant duty rate) from heading 9903.80.02/01 to classification solely under chapter 73 (articles of iron or steel) of the HTSUS, when it sought to apply the claimed retroactive exclusions to the 19 entries. Thus, plaintiffs' protest is precisely a challenge to the tariff classification of the merchandise; either duties are due at the *ad valorem* tariff rates provided under headings 9903.80.02 and 9903.80.01, HTSUS, or they are not, depending on the correct classification of the merchandise.  In other words, whether or not Section 232 duties are assessed for the subject merchandise depends on whether the merchandise is properly classified under headings 9903.80.02/01.  There are no "charges or exactions" at issue for these entries beyond the duties due by application of the *ad valorem* tariff rates provided in the relevant HTSUS classification.

It is well-established that statutory provisions must not be interpreted in ways that effectively make other provisions meaningless.  *See, e.g.*, *Corley v. United States,* 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."); *Splane v. West*, 216 F.3d 1058, 1068 (Fed. Cir. 2000) ("We must construe a statute, if at all possible, to give effect and meaning to all its terms.").  However, if the term "charges or exactions," under § 1514(a)(3), were interpreted to include estimated duty deposits collected in accordance with the HTSUS classifications provided on the entry summary, as plaintiffs suggest, then "charges or exactions" under § 1514(a)(3) would essentially subsume the separate provision for protesting "the classification and rate and amount of

duties chargeable" under § 1514(a)(2), thereby impermissibly rendering § 1514(a)(2) meaningless.

Nevertheless, plaintiffs argue that their protest is different from other premature pre-liquidation protests concerning the classification and applicable duty rate and amount for unliquidated entries, because the relevant competing classifications involve a determination as to whether the imported merchandise is or is not covered by a retroactive exclusion determined and announced by Commerce. Pls.'s Mem. at 21-22. But the question presented by plaintiffs' pre-liquidation protest is the same: what is the correct classification and attendant applicable duty rate, as provided for in the applicable HTSUS provision for the imported merchandise in the subject entries? If the merchandise is covered by the claimed retroactive exclusions, then the correct classification is not in heading 9903.80.02/01, HTSUS, as entered, but, if the exclusions do not apply, then the correct classification is in heading 9903.80.02/01, HTSUS. And as with any other consumption entry, CBP's final determination as to the correct classification of the imported merchandise will be made upon liquidation, which the importer may then protest within 180 days *after* (but not before) the date of liquidation.

The protest in this case is thus no different from any other protest involving the classification and applicable rate of duty for any imported merchandise. In all such protest cases, the importer must deposit the estimated duties at the rate applicable under the HTSUS classification provision under which the merchandise is entered, and in all such cases CBP has until liquidation to fix the final classification and rate of duty. *See* 19 U.S.C. §§ 1505(a), 1500(b)-(d), 1514(a)(2). Specifically, "under rules and regulations prescribed by the Secretary," CBP must "fix the final classification and rate of duty

applicable [and] … liquidate the entry." 19 U.S.C. § 1500(b), (d).  The rules and regulations prescribed by the Secretary define "liquidation" as "the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. § 159.1.  Here, it is undisputed that the subject entries are all unliquidated, so CBP's final computation and ascertainment of duties for these entries has not yet been made.

The plaintiffs cannot bypass these statutory requirements, just as no other importer who similarly may not wish to wait until liquidation also cannot bypass the legal framework established by Congress, by prematurely protesting and filing suit.  CBP has not yet liquidated, and, therefore, has not yet made its final determination with regard to the classification and applicable rate and amount of duties.  Because nothing distinguishes plaintiffs' claim in this case from any other importer's potential claims with regard to the entered classification of its imported merchandise, permitting the plaintiffs here to circumvent the statutory requirements and procedures for liquidation and post-liquidation protest would render the statutory requirements and procedures meaningless in all cases where importers may not want to wait for CBP to make its final decision on classification within the statutory timeframes for liquidation.[7]

---

[7]  Under the statute, CBP generally has one year from the date of entry to liquidate an entry of merchandise for consumption – i.e., to make the agency's final determination concerning "the final computation or ascertainment of duties" – unless liquidation is extended for cause as provided in 19 U.S.C. § 1504(b), which generally authorizes extensions under certain conditions for up to a total of four years from the date of entry, or unless liquidation is suspended as required by statute or court order. *See* 19 U.S.C. § 1504(a)(1).  Where liquidation is suspended as required by statute or court order, CBP generally has six months to liquidate after receiving notice of the removal of the suspension from Commerce (or another agency, as applicable) or the court with jurisdiction over the entry, unless liquidation is extended under subsection (b). *See* 19 U.S.C. § 1504(d).

Indeed, because CBP's final determination is not made until liquidation, CBP may yet find that plaintiffs' nineteen entries are subject to the two exclusions and alter the classification and rate of duty.  CBP may consider additional information and arguments as presented by plaintiffs until a decision at liquidation is made.  Additionally, should a valid protest be filed (within 180 days after but not before liquidation) contesting CBP's determination at liquidation, CBP may further consider the issue and could decide in plaintiffs' favor.  Accordingly, a pre-liquidation protest, such as plaintiffs have filed here, fails to allow the administrative process to be carried out to completion and fails to conserve attorney and judicial resources.

### B.    The Date of Liquidation Applies

Plaintiffs also argue that their protest is timely pursuant to subsection 1514(c)(3)(B), "because liquidation is 'inapplicable' to the exaction being protested." Pls.'s Mem. at 19.  Plaintiffs are mistaken.  Section 1514(c)(3) provides:

> (3)    A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before—
>      (A)    date of liquidation or reliquidation, or
>      (B)    in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

"Subparagraph (B) applies to protests when Customs discloses the terms of its protested decisions independent of any liquidation." *Ford Motor Co. v. United States*, 435 F. Supp. 2d 1324, 1331, 30 C.I.T. 788, 794 (Ct. Int'l Trade 2006), citing 19 C.F.R. § 174.12(e)(2) ("providing a non-exhaustive list of 'decisions of the Customs Service' to which subparagraph (B) applies").  "[F]or example: The date of an exaction; the date of written notice excluding merchandise from entry, delivery or demanding redelivery to CBP custody under any provision of the customs laws; the date of written notice of a denial of

14

a claim filed under section 520(d), Tariff Act of 1930, as amended (19 U.S.C.

[§] 1520(d)) . . ."  19 C.F.R. § 174.12(e)(2).

First, and most fundamentally, the "date of liquidation" referenced by 19 U.S.C.

§ 1514(c)(3)(A) is applicable because there is no dispute that all of the entries at issue are

still unliquidated, that the period for liquidation has not expired, and that all of the entries

will eventually be liquidated and such liquidations will be subject to protest as provided

by law.  Despite the certainty of liquidation and availability of post-liquidation protest,

plaintiffs argue that the "date of liquidation" is inapplicable because, in their view,

"CBP's decision with respect to this *exaction* became final on September 10, 2020." [8]

Pls.'s Mem. at 20 (emphasis added).  An exaction is defined as a fee.  *See, e.g.,* Merriam

Webster's online dictionary ("something exacted; especially: a fee, reward, or

contribution demanded or levied with severity or injustice").[9]  However, as noted

previously, an importer's deposit of estimated duties at the rate applicable under the

HTSUS classification provision under which the merchandise is entered, as required by

law, is not an exaction.  *See* 19 U.S.C. § 1505(a).

This is not a case involving "circumstances where subparagraph (A) is

inapplicable."  On the contrary, as explained above, plaintiffs' protest seeks

---

[8]  Plaintiffs rely on an email from the Director of CBP's Base Metals Center (Center Director), stating that "in this case we have determined that there was insufficient information provided to indicate that the importation was within the scope of the approved exclusion," Pls.'s Mem. at Attachment 10, to argue that CBP's decision became final on the date of the Center Director's email.  But, as a matter of law, the agency has the full statutory period for liquidation (which may be extended or suspended) to make its final and protestable determination as to the classification and rate and amount of duties chargeable for the merchandise in these subject entries.  Because an email from the Center Director, indicating that a PSC seeking reclassification prior to liquidation was found to have been insufficiently substantiated, is not CBP's final decision on liquidation, the email from the Center Director is not a final and protestable decision by the agency.

[9]  *Available at,* https://www.merriam-webster.com/dictionary/exaction.

reclassification of the merchandise in the subject unliquidated entries, but CBP's classification for merchandise in consumption entries is not finally fixed until liquidation. 19 U.S.C. § 1500(b)-(d); 19 C.F.R. § 159.1.

It is well-established that protestable decisions made by CBP as to the classification and rate and amount of duties chargeable for consumption entries at liquidation "include[e] the legality of all orders and findings entering into the same." 19 U.S.C. § 1514(a). All Customs decisions "involved in the ascertaining and fixing the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of legal liquidation, and it is a legal liquidation only … against which a protest will lie." *Dow Chemical Co. v. United States*, 10 CIT 550, 557, 647 F. Supp. 1574 (1986) (quoting *Dart Export Corporation v. United States*, 43 CCPA 64, 73, C.A.D. 610 (1956)). Thus, plaintiffs' claim that CBP made a final and protestable decision in not approving the importer's PSCs, which sought to change the classification of the subject merchandise prior to liquidation, Pls.'s Mem. at 19-20, fails because CBP's decisions on PSCs concerning the classification and rate and amount of duties chargeable in consumption entries "merge in and become part of liquidation," and it is only the final classification and rate and amount of duties fixed at liquidation that are protestable. *See Dow Chemical*, 10 CIT at 557. Indeed, any final decision upon liquidation could potentially moot any preliminary agency decision on a PSC.

Accordingly, the alternative in 19 U.S.C. § 1514(c)(1)(B) does not apply here. Rather, because liquidation is, by definition, CBP's "final computation or ascertainment of duties on entries for consumption," a protest as to the amount of duties owed on

particular entries of imported merchandise, based on a claimed change in the relevant HTSUS classification provision that provides the applicable duty rate (like plaintiffs' protest in this case), is necessarily a protest as to the final amount of duties that are to be computed at liquidation, and it is well-established that all prior decisions involved in ascertaining and fixing the rate and amount of duties computed at liquidation will be merged in and become a part of the legal liquidation. Such a protest must be filed within 180 days *after* liquidation, 19 U.S.C. § 1514(c)(3)(A), and is premature and invalid prior to liquidation, when CBP has not yet made its final decision to fix the classification and rate and amount of duties for the subject entries.

### C.    Plaintiffs Are Not Entitled To Pre-Liquidation Refunds

Plaintiffs further argue that they are "entitled by law" to pre-liquidation refunds of the estimated duties that Borusan deposited pursuant to 19 U.S.C. § 1505(a) at the duty rate provided in the HTSUS classification provisions under which the subject merchandise was entered. *See* Pls.'s Mem. at 16. Plaintiffs claim that CBP's refusal to issue pre-liquidation refunds represent an exaction. Plaintiffs are mistaken. While the statute authorizes CBP to issue pre-liquidation refunds in appropriate circumstances, there is no statutory *requirement* to do so. 19 U.S.C. § 1520(a)(4). Rather, the statute requires that CBP "refund any excess moneys deposited, together with interest thereon, *as determined on a liquidation or reliquidation*." 19 U.S.C. § 1505(b) (emphasis added).

Prior to 2006, the statute had permitted CBP to issue pre-liquidation refunds *only* where CBP determined the deposits to have been in excess and where the excess deposits were due to "clerical error." The 2006 amendments to 19 U.S.C. § 1520(a)(4) removed the words "by reason of clerical error" and added "an importer of record declares," thereby permitting CBP to act on importers' requests for pre-liquidation refunds where

CBP determines that excess duties, fees, charges, or exactions have been deposited or paid for any reason.[10]  Importantly, however, the statute is permissive, not mandatory, *compare* 19 U.S.C. § 1520(a)(4) ("authorized" to refund pre-liquidation), *with* 19 U.S.C. § 1505(b) ("shall" refund upon liquidation), and there is no deadline for acting on pre-liquidation requests, other than the deadline for liquidation itself.

CBP's exercise of discretion in this regard is not protestable.  The agency is legally entitled to use all necessary time as authorized under the statute to determine any and all appropriate refunds that may be due for a particular entry of imported merchandise upon liquidation.  As discussed above, the statute generally provides CBP with one year from the date of entry, unless the period for liquidation is lawfully extended or suspended; if liquidation is suspended, then CBP is provided with six months from the date on which the agency receives notice of the removal of suspension, unless the period for liquidation is extended under § 1504(b), in which case CBP may take the full extended period to liquidate.  *See* 19 U.S.C. § 1504.  If, upon liquidation or reliquidation, CBP determines that a refund of any excess monies deposited is due, the statute provides for interest on such excess deposits from the date of the deposit to the date of the liquidation or reliquidation, thereby making the importer whole despite the wait.  *See* 19 U.S.C. § 1505(c).

While CBP has authority and discretion to manually process pre-liquidation refunds of excess duty deposits, and has done so in some cases, the importer is not

---

[10]  *See* Pension Protection Act of 2006 Pub. L. 109-280 (Aug. 17, 2006), 120 Stat. 1170, at Title XIV (Tariff Provisions) § 1635(b) (Technical Amendments to Customs Modernization – Refunds and Errors) (amending 19 U.S.C. § 1520(a)(4) in this way). We believe this to be the first CIT case to raise the issue of pre-liquidation refunds since the 2006 amendments.

entitled to such pre-liquidation refunds, and the agency's exercise of discretion with regard to any particular request for pre-liquidation refunds based on a claimed change in classification (and the attendant applicable duty rate) is not protestable.

*     *     *

In sum, the Court lacks jurisdiction under 28 U.S.C. §1581(a) and this case must be dismissed.  Plaintiffs' protest, seeking the reclassification of merchandise in nineteen entries that CBP has not yet liquidated, is premature and invalid under 19 U.S.C. § 1514(c)(1)(A).  The alternative in 19 U.S.C. § 1514(c)(1)(B) does not apply because this is not a case where liquidation "is inapplicable" because liquidation is by definition CBP's "final computation or ascertainment of duties on entries for consumption," 19 C.F.R. § 159.1.  Plaintiffs seek to alter the amount of duties owed on particular entries of imported merchandise, which is necessarily a protest as to the final amount of duties to be computed at liquidation.  Such protest must be filed within 180 days *after* but not before liquidation, 19 U.S.C. § 1514(c)(1)(A), and is premature and invalid prior to liquidation, when CBP has yet to make a final decision with respect to the classification and rate and amount of duties for the subject entries.  *See* 19 U.S.C. § 1500; 19 C.F.R. § 159.1.  Because "a prerequisite to the [CIT's] 28 U.S.C. § 1581(a) jurisdiction is the filing of a valid protest under the protest statute, 19 U.S.C. § 1514," *see, e.g.*, *Ford Motor Co. v. United States*, 30 CIT 788, 793 (2006), this case must be dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 1581(a), as it is based on an invalid protest.

19

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Government's motion to dismiss.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy R. Eddon
GUY R. EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated:  November 12, 2021

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division,

Commercial Litigation Branch, International Trade Field Office, who is responsible for the

Government's reply memorandum in further support of defendant's motion to dismiss, dated

November 12, 2021, relying upon the word count feature of the word processing program used to

prepare the memorandum, certify that this memorandum complies with the word count limitation

under the Court's chambers procedures, and contains 5,681 words.

<u>/s/ Guy Eddon</u>