

CHAMBERS OF
TIMOTHY M. REIF
JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, N.Y. 10278-0001

January 20, 2022

**VIA CM/ECF**

      Re:    *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. et al v. United States*
             Court No. 21-00186

Dear Counsel:

      Oral argument in this action is scheduled for January 26, 2022, at 10:00 am EST in Courtroom No. 1 of the U.S. Court of International Trade, One Federal Plaza, New York, N.Y., with the option to appear via video conference.  In preparation for oral argument, the court would like counsel to be prepared to address the following issues.  As the court continues to review the documents in this case or as the argument on Wednesday progresses, the court may decide to ask additional questions.

      Please be advised that the court prefers to conduct oral argument interactively, allowing each party to respond to the question presented before moving on to the next question.  To facilitate this interaction, counsel are invited to remain seated for the duration of the hearing.

**I.**      <u>**Customs' discretion to issue refunds prior to liquidation**</u>

1.  Defendant argues that plaintiffs are not "entitled by law" to pre-liquidation refunds of the section 232 duties because, pursuant to 19 U.S.C. § 1520(a)(4), Customs has discretion to decide whether to issue refunds prior to liquidation.

      a.  19 U.S.C. § 1520(a)(4) states: "The Secretary of the Treasury is authorized to refund duties or other receipts . . . [p]rior to the liquidation of an entry or reconciliation, whenever an importer of record declares or it is ascertained that excess duties, fees, charges, or exactions have been deposited or paid."  Is it plaintiffs' position that the statute does not provide Customs with the discretion to issue refunds prior to liquidation?

    b.  If it is within Customs' discretion to issue refunds prior to liquidation, how, if at all, did the section 232 exclusion process and related administrative refund process affect Customs' discretion?

    c.  19 U.S.C. § 1514 provides the procedures for interested parties to dispute a decision by Customs.  In particular, the statute states:  "*Except as provided in . . . section 1520 of this title (relating to refunds)* . . . any . . . decisions of the Customs Service . . . shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade."  19 U.S.C. § 1514(a) (emphasis supplied).  Based on the statutory language, can an interested party protest a decision by Customs to deny a refund *prior* to liquidation under 19 U.S.C. § 1514?

**II.**    **Rules and Procedures for Customs' issuance of administrative refunds for Section 232 exclusions**

1.  Under what legal authority (statute, regulation, Presidential Proclamation) is Customs exercising its authority to administer refunds pursuant to the section 232 exclusions?

2.  Customs provided instructions for importers to request an administrative refund via its Cargo Systems Messaging Service ("CSMS").  What is the legal status of these instructions?

3.  Customs' instructions for retroactive exclusions states: "If a product exclusion has been granted, an importer of record (IOR) may request a refund by filing a corrective action with [Customs] by filing a post summary correction (PSC) for unliquidated entries or file a protest for entries that have liquidated but where the liquidation is not final and the protest period has not expired."  *See* CSMS # 42566154.

    a.  Defendant maintains that Customs' language as provided in the CSMS does not mean that Customs will issue the administrative refunds before liquidation.  In particular, defendant asserts that if Customs finds that a retroactive exclusion applies to an entry, Customs "will liquidate the entries without assessing Section 232 duties and the importer will receive a refund of the duties plus lawful interest upon liquidation."  Can defendant point to language in the relevant authority or instructions (*e.g.,* CSMS messages) that supports defendant's description of Customs' procedures for issuing section 232 refunds?

    b.  Has Customs in other cases issued administrative refunds for section 232 exclusions?  If so, did Customs issue the refunds before or at liquidation?

4.  In its complaint to the Court, plaintiffs assert that Customs advised BMB to file a request for administrative refund to receive the refund *prior* to liquidation.  Is this correspondence in the record?

### III.    The Timeliness of Plaintiffs' Protest

1.  Defendant asserts that BMB filed PSCs "seeking to change the applicable HTSUS classification," and, therefore, defendant maintains that plaintiffs' protest is to challenge the tariff classification of the 19 entries.  Why is the issue of tariff classification not settled by the Commerce exclusions?

2.  The Federal Circuit has held that a request for a refund constitutes an exaction within the meaning of 19 U.S.C. § 1514(a) and is subject to the protest timeframe under 19 U.S.C. §1514(c)(3)(B).  *Swisher Int'l., Inc. v. U.S.*, 205 F.3d 1358, 1366-1369 (2000).

    a.  How, if at all, is the denial of a section 232 refund distinct from these cases?

    b.  Are there any cases in which a protest of a Customs' decision as to a charge or exaction is not subject to the protest time period under 19 U.S.C. § 1514(c)(3)(B)?

3.  The court has determined that the time period for protest in 19 U.S.C. § 1514(c)(3)(A) applies only when there is a "nexus between the protested decision and the liquidation" of an entry.  *Ford Motor Co. v. U.S.*, 30 CIT 788, 795, 435 F. Supp. 2d 1324,1332 (2006).  Is there a nexus between Customs' denial of a section 232 administrative refund and liquidation?

4.  In *Ford Motor*, the court explained: "In deciding whether a valid protest [under 19 U.S.C. § 1514(c)(3)] has occurred . . . a court must determine if subparagraph (A) is applicable to the facts of the case.  In most cases, this inquiry is summary; however, where, as here, the protest presents an unordinary and complicated customs transaction, a quick look will not suffice."  *Ford Motor*, 30 CIT at 793, 435 F. Supp. 2d at 1330.  How, if at all, does the "unordinary" language in *Ford Motor* apply to this case?

4

      The court prefers to discuss any confidential information all at once, following the public session, at which time those without authorized access to confidential information will be asked to leave the Courtroom or be dropped from the videoconference.

      Parties may raise other issues that they consider to be of highest importance. Thank you for your assistance and cooperation.

> Sincerely,
>
> /s/ Timothy M. Reif
> _____
> Timothy M. Reif, Judge

4