Slip Op. 22-58

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S. AND GULF COAST EXPRESS PIPELINE, LLC, | |
| Plaintiffs, | Before: Timothy M. Reif, Judge |
| v. | Court No. 21-00186 |
| UNITED STATES, | PUBLIC VERSION |
| Defendant. | |

## <u>OPINION</u>

[ Granting defendant's motion to dismiss for lack of subject matter jurisdiction. ]

Dated: <u>June 1, 2022</u>

<u>Julie C. Mendoza</u>, <u>R. Will Planert</u>, <u>Edward J. Thomas III</u>, Morris, Manning & Martin, LLP, of Washington, D.C., argued for plaintiff Borusan Mannesmann Boru Sanayi ve Ticaret A.S.  With them on the brief were <u>Donald B. Cameron, Jr.</u>, <u>Brady W. Mills</u>, <u>Mary S. Hodgins</u>, <u>Jordan L. Fleischer</u>, and <u>Nicholas C. Duffey</u>.  <u>Jonathan T.</u> Stoel and <u>Jared R. Wessel</u>, Hogan Lovells US LLP, of Washington, D.C., argued for plaintiff Gulf Coast Express Pipeline, LLC.  With him on the brief were <u>Nicholas W. Laneville</u>.

<u>Guy R. Eddon</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for defendant United States.  With him on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, <u>Aimee Lee</u>, Assistant Director, and <u>Justin R. Miller</u>, Attorney-in-Charge.  Of counsel on the brief was <u>Alexandra Khrebtukova</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

Reif, Judge: The action before the court involves a motion to dismiss for lack of

subject matter jurisdiction pursuant to United States Court of International Trade

("USCIT") Rule 12(b)(1).  Plaintiffs, Borusan Mannesmann Boru Sanayi Ticaret A.S.

("BMB") and Gulf Coast Express Pipeline LLC ("GCX"), initiated this action to challenge

PUBLIC VERSION

the denial of Protest No. 531221100010 by U.S. Customs and Border Protection

("Customs") and contest Customs' denial of administrative refunds of tariffs on 19

entries of imported Turkish steel pipe.  Compl. ¶ 1, ECF No. 7.  Defendant, the United

States ("defendant"), moves to dismiss this action for lack of subject matter jurisdiction

because the subject entries are unliquidated.  Def.'s Mot. to Dismiss ("Def. Mot.") at 1-2,

ECF No. 21.

## BACKGROUND

On March 8, 2018, and pursuant to section 232 of the Trade Expansion Act of

1962 ("Section 232"), 19 U.S.C. § 1862 (2018),[1] the President issued Presidential

Proclamation 9705.[2]  *See* Proclamation 9705 of March 8, 2018, *Adjusting Imports of*

*Steel into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ("Proclamation

9705").  Proclamation 9705 introduced Heading 9903.80.01, imposing a 25 percent *ad*

*valorem* tariff on U.S. imports of certain steel products.[3]  *See id.* at 11,626.

Proclamation 9705 authorized the U.S. Department of Commerce ("Commerce") to

---

[1] Further citations to the U.S. code are to the 2018 edition.

[2] Presidential Proclamation 9705 went into effect on March 23, 2018.  *See* Proclamation 9705 at 11,628.

[3] On August 10, 2018, the President issued Presidential Proclamation 9772.  *See* Proclamation 9772, *Adjusting Imports of Steel into the United States*, 158 Fed. Reg. 40,429 (Aug. 10, 2018).  Proclamation 9772 introduced Heading 9903.80.02 of the HTSUS, increasing the rate of duty on applicable steel products to 50 percent.  *See id.* The 50 percent tariff rate was lifted on May 21, 2019.  *See* Proclamation 9886, *Adjusting Imports of Steel into the United States*, 84 Fed. Reg. 23,421, 23,422 (May 16, 2019).

**PUBLIC VERSION**

grant exclusions from Section 232 duties "for any steel article determined not to be

produced in the United States in a sufficient and reasonably available amount or of a

satisfactory quality and . . . to provide such relief based upon specific national security

considerations." *Id*. at 11,627.  The Bureau of Industry and Security of the U.S.

Department of Commerce ("BIS") established procedures for processing exclusion

requests.  The procedures provide that:

> The Department will grant properly filed exclusion requests which meet the requisite criteria, receive no objections, and present no national security concerns.  After an exclusion request's 30-day comment period . . . BIS will work with [Customs] to ensure that the requester provided an accurate HTSUS statistical reporting number.  If so, BIS will immediately assess the request for satisfaction of the requisite criteria and any national security concerns.  If BIS concludes that the request satisfies the criteria and identifies no national security concerns with granting the request, BIS will expeditiously post a decision on regulations.gov granting the exclusion request.

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel

and Aluminum*, 83 Fed. Reg. 46,026, 46,043 (Dep't Commerce Sept. 11, 2018); *see

also Requirements for Submissions Requesting Exclusions from the Remedies

Instituted in Presidential Proclamations Adjusting Imports of Steel into the United States

and Adjusting Imports of Aluminum into the United States; and the Filing of Objections

to Submitted Exclusion Requests for Steel and Aluminum,* 83 Fed. Reg. 12,106, 12,110

(Dep't Commerce Mar. 19, 2018).

Once a product has been granted an exclusion, the importer may apply for a

refund of the Section 232 tariffs with Customs.  Customs, through its Cargo Systems

Messaging Service ("CSMS"), notified the public of the procedures for "submitting

**PUBLIC VERSION**

retroactive claims for Section 232 . . . product exclusions to Customs." *See* U.S.

Customs and Border Prot., *CSMS # 42566154 – Section 232 and Section 301 –*

*Extensions Requests, PSCs, and Protests*,

https://content.govdelivery.com/accounts/USDHSCBP/bulletins/289820a

(May 1, 2020, 5:05 PM) ("CSMS # 42566154"); U.S. Customs and Border Prot., *CSMS*

*# 39633923 – UPDATE Submitting Imports of Products Excluded from Duties on*

*Imports of Steel or Aluminum*,

https://content.govdelivery.com/accounts/USDHSCBP/bulletins/25cc403 (Sept. 3, 2019,

11:08 AM) ("CSMS # 39633923").  Customs explained:

> If a product exclusion has been granted, an importer of record (IOR) may request a refund by filing a corrective action with [Customs] by filing a post summary correction (PSC) for unliquidated entries or file a protest for entries that have liquidated but where the liquidation is not final and the protest period has not expired.
>
> When a product exclusion is granted, an importer may submit a PSC to request a refund on unliquidated entries up to 15 days prior to the scheduled liquidation date (generally within 300 days from the date of entry summary filing).  If an entry summary is set to liquidate in less than 15 days or has already liquidated, the entry summary is beyond the PSC filing period. However, the importer may file a protest so long as the protest is filed within the 180-day period following liquidation of the impacted entry summary(ies).

CSMS # 42566154; *see also* CSMS # 39633923 ("To request an administrative refund

for previous imports of duty-excluded products granted by [Commerce], importers may

file a Post Summary Correction (PSC) and provide the product exclusion number in the

Importer Additional Declaration Field.  If the entry has already liquidated, importers may

protest the liquidation.").

**PUBLIC VERSION**

This action covers 19 entries of certain welded line pipe from Turkey entered into the United States by BMB from August 5, 2018, through February 7, 2019.  *See* Compl. ¶¶ 1, 26.  BMB is the importer of record of the subject merchandise and GCX is the "consignee of the merchandise."  *Id.* ¶¶ 6-7.  The subject merchandise is specialized X70 large diameter welded line pipe manufactured by BMB in Turkey.  *Id.* ¶ 22.  BMB imported the subject merchandise for the construction of the Gulf Coast Express Pipeline.  *Id.*

On April 24, 2018, GCX submitted two exclusion requests to BIS covering the two different sizes of specialized X70 pipe.  *Id.* ¶ 25.  Between August 5, 2018, and February 7, 2019, BMB imported 20 entries of specialized X70 alloy steel pipe and paid the Section 232 tariffs on each entry.  *Id.* ¶ 26.[4]  On May 22, 2020, BIS granted GCX the exclusions.  *Id.* ¶¶ 22, 32.  The exclusions had retroactive effect back to April 24, 2018, the date on which GCX submitted the initial requests.  *Id.* ¶ 32; Pls'. Resp. to Mot. to Dismiss ("Pls. Resp."), ECF No. 28, at Ex. 1, Attach. 5.

---

[4] The twentieth entry is not subject to this action.  *See* Compl. ¶¶ 1, 41-42.  This entry was not subject to the litigation that suspended the liquidation of the other 19 entries. *See* discussion of litigation *infra* pp. 6-8 and notes 6-8; *see also* Compl. ¶¶ 41-42. Accordingly, the twentieth entry liquidated on October 11, 2019.   Compl. ¶ 41.  BMB subsequently challenged the liquidation of the twentieth entry.  *Id.*  On November 4, 2020, the USCIT approved a stipulated judgment on agreed statement of the facts.  The stipulated judgment stated that the twentieth entry "is not classifiable in heading 9903.80.02, HTSUS, because it is subject to exclusions determined and announced by the Department of Commerce."  Order entered on 11/4/2020, Form 9 stipulation on agreed statement of facts granted, Ct. No. 20-00145 (CIT Nov. 4, 2020), ECF No. 14; *see* Compl. ¶¶ 41-42.

**PUBLIC VERSION**

On June 18 and 19, 2020, BMB submitted to Customs post-summary corrections ("PSCs") to apply the GCX product exclusions to the 19 entries.  Compl. ¶ 33.  BMB included in its submissions "extensive documentation" demonstrating that the 19 entries of the subject merchandise fell within the category of Section 232 exclusions granted by BIS.  Pls. Resp. at 9, Ex. 2, Attach. 8.  The documentation also confirmed that all entries entered the United States between August 5, 2018, and February 7, 2019, and, therefore, entered during the time period for which GCX's exclusions were effective (April 24, 2018, through May 21, 2021).  *Id*.  On June 30, 2020, the Customs specialist reviewing the PSCs:

> [A]dvised BMB that BMB needed to file a request for [sic] administrative refund in order to receive the requested refunds of the Section 232 tariffs prior to liquidation.  BMB complied and filed a written request for administrative refund for all of the entries, enabling [Customs] to refund the tariffs prior to liquidation.[5]

Compl. ¶ 35.

During the administrative refund process, the liquidation of 18 of the 19 entries at issue was enjoined due to two separate cases before the Court — *Transpacific Steel LLC v. United States* and *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States.  See* line of cases captioned *Transpacific Steel LLC v. United States*;[6] the line of

---

[5] The correspondence between BMB and the Customs import specialist on June 30, 2020, is not provided for in the attachments to the complaint or the parties' briefings; however, defendant does not challenge this correspondence.

[6] *See Transpacific Steel LLC v. United States*, 44 CIT __, 466 F. Supp. 3d 1246 (2020); *Transpacific Steel LLC v. United States LLC v. United States*, 44 CIT __, 474 F. Supp. 3d 1332 (2020); (footnote continued)

**PUBLIC VERSION**

cases captioned *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*.[7]

Accordingly, the liquidation for these 18 entries is suspended during the pendency of

the litigation of those cases, including any appeals.[8]  Def. Reply Mem. in Further

---

*Transpacific Steel LLC. V. United States*, 44 CIT __, 481 F. Supp. 3d 1326 (2020);
*Transpacific Steel LLC v. United States*, 840 Fed. Appx. 517 (Fed. Cir. 2020);
*Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021), *cert. denied*, __
U.S. __, 142 S.Ct. 1414, __ L.Ed.2d __ (2022).

[7] *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 44 CIT __, 426 F.
Supp. 3d 1395 (2020); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United
States,* Slip Op. 20-71, 2020 WL 2613345 (CIT May 22, 2020), *rev'd*, 5 F.4th 1367 (Fed.
Cir. 2021); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 2021,
Slip Op. 21-174, 2021 WL 6123540 (CIT Dec. 28, 2021), *appeal docketed*, Consol. Ct.
No. 2022-1502 (Fed. Cir. Mar. 1, 2022).

[8] The litigation in *Transpacific* has concluded.  The USCIT issued its decision on July
14, 2020.  *Transpacific Steel LLC v. United States*, 44 CIT __, 466 F. Supp. 3d 1246.
On July 13, 2021, the U.S. of Court of Appeals for the Federal Circuit ("Federal Circuit")
reversed and remanded the case back to the USCIT.  *Transpacific Steel LLC. V. United
States*, 4 F.4th 1306 (Fed. Cir. 2021).  On March 28, 2022, the U.S. Supreme Court
denied the petition for writ of certiorari.  *Transpacific Steel LLC v. United States*, __ U.S.
__,142 S.Ct. 1414, __ L.Ed.2d__ (2022).  The litigation in *Borusan* is ongoing.  On
December 28, 2021, the USCIT issued an order and a slip opinion concerning the
second remand redetermination by Commerce in the antidumping duty investigation of
Large Diameter Welded Pipe from the Republic of Turkey.  *See Borusan Mannesmann
Boru Sanayi ve Ticaret A.S. v. United States*, Slip Op. 21-174, 2021 WL 6123540 (CIT
Dec. 28, 2021); Order, *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United
States*, ECF No. 125 (Dec. 28, 2021) ("ORDERED that the entries subject to the
statutory injunction issued in this matter shall be liquidated in accordance with the final
court decision in this action, including all appeals and remand proceedings, as provided
in 19 U.S.C. § 1516a(e).")  On May 1, 2022, consolidated plaintiffs and defendant-
intervenors filed an appeal to the Federal Circuit.  Appeal of Slip-Op 21-174 *& Judgment
docketed on 3/1/2022 by the CAFC as appeal no. 2022-1502, Consol. Ct. No. 19-00056
(CIT Mar. 1, 2022), ECF No. 128; *see Borusan Mannesmann Boru Sanayi ve Ticaret
A.S. v. United States*, Slip Op. 21-174, 2021 WL 6123540 (CIT Dec. 28, 2021), *appeal
docketed*, Consol Ct. No. 2022-1502 (Fed. Cir. Mar. 1, 2022).

**PUBLIC VERSION**

Court No. 21-00186                                                                                     Page 8

Support of its Mot. to Dismiss ("Def. Reply Mem.") at 5-6, ECF No. 33; Pls. Resp. at 9-

10.  The nineteenth entry, no. 002-7131800-8, is not subject to the litigation described

above; however, the entry remains unliquidated as liquidation for this entry has been

extended until August 5, 2022.[9]  Def. Reply Mem. at 7-8; *see* Compl. ¶ 13, n.1.

On September 10, 2020, Customs denied the PSCs submitted by BMB and

denied the request for administrative refunds.  Pls. Resp. at 10, Ex. 2, Attach. 10.[10]  On

March 8, 2021, BMB and GCX filed jointly Protest Number 531221100010 ("the

Protest") to challenge Customs' decision to deny the administrative refunds.  Compl. ¶

15.  On April 6, 2021, Customs denied the Protest.[11]  *Id.* ¶ 45.  On April 22, 2021,

---

[9] The liquidation of the nineteenth entry has been extended three times.  Def. Reply
Mem. at 7.  Customs initiated the first extension.  The second and third extensions were
requested by the importer and granted by Customs.  *Id*.

[10] In an e-mail, Customs explained:

> For clarification, BIS approves exclusions, [Customs] enforces them and in
> this case we have determined that there was insufficient information
> provided to indicate that the importation was within the scope of the
> approved exclusion.  If BIS wishes to speak to us, they are able to contact
> us directly as they are a partner government agency. . . .  [W]e have enough
> information to make a determination.  If you'd like to further explain or
> provide additional information, you may do so via the protest process.  Your
> additional information can be reviewed and considered at that time.

Pls. Resp. at Ex. 2, Attach. 10 at 1.

[11] In an e-mail, Customs denied the Protest providing the following explanation: [[

]]  Pls. Resp. at Ex. 2, Attach. 13.

Court No. 21-00186                                                                                   Page 9

plaintiffs commenced this action under 28 U.S.C. § 1581(a) to challenge Customs'

denial of the Protest and administrative refunds.

## STANDARD OF REVIEW

When the Court's jurisdiction is challenged, "'the burden rests on plaintiff to prove

that jurisdiction exists.'"  *Pentax Corp. v. Robison*, 125 F.3d 1457, 1462 (Fed. Cir.

1997)*, modified in part*, 135 F.3d 760 (Fed. Cir. 1998) (citation omitted); *see*

*Intercontinental Chemicals, LLC v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1232,

1236 (2020); *see also Wally Packaging, Inc. v. United States*, 7 CIT 19, 20, 578 F.

Supp. 1408, 1410 (1984).

"When, as here, the 'motion challenges a complaint's allegations of jurisdiction,

the factual allegations in the complaint are not controlling and only uncontroverted

factual allegations are accepted as true.'"  *Nat'l Nail Corp. v. United States*, 42 CIT __,

__, 335 F. Supp. 3d 1321, 1325 (2018) (quoting *Shoshone Indian Tribe of Wind River*

*Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012)).  "To 'resolv[e]

these disputed predicate jurisdictional facts, a court is not restricted to the face of the

pleadings, but may review evidence extrinsic to the pleadings.'"  *Id*.

## LEGAL FRAMEWORK

Plaintiffs assert jurisdiction under 28 U.S.C. § 1581(a).  Compl. ¶ 5.  The statute

grants this Court "exclusive jurisdiction" over "any civil action commenced to contest the

denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  28

U.S.C. § 1581(a).  "[A] prerequisite to the Court's 28 U.S.C. § 1581(a) jurisdiction is the

**PUBLIC VERSION**

filing of a valid protest under the protest statute, 19 U.S.C. § 1514." *Ford Motor Co. v.*

*U.S.*, 30 CIT 788, 793, 435 F. Supp. 2d 1324, 1330 (2006) (citing *Saab Cars USA, Inc.*

*v. United States*, 434 F.3d 1359, 1365 (Fed. Cir. 2006)).

19 U.S.C. § 1514(a) states:

> Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds) . . . any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of [Customs], including the legality of all orders and findings entering into the same, as to —
>
> > (1) the appraised value of merchandise;
> > (2) the classification and rate and amount of duties chargeable;
> > (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
> > (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
> > (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;
> > (6) the refusal to pay a claim for drawback; or
> > (7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;
>
> shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title.

19 U.S.C. § 1514(a).

**PUBLIC VERSION**

Section 1514(c)(3) provides that a protest of a decision, order or finding by Customs "shall be filed with [Customs] within 180 days after but not before . . . (A) date of liquidation or reliquidation, or (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made."  19 U.S.C. § 1514(c)(3).

**DISCUSSION**

Plaintiffs assert that this Court has subject matter jurisdiction over this case for two reasons: (1) Customs' denial of the administrative refunds constitutes a protestable decision as to a charge or exaction within the meaning of § 1514(a)(3); and (2) pursuant to § 1514(c)(3)(B), liquidation is inapplicable, and, therefore, the protest became ripe on the "date of the decision as to which [the] protest is made."  Pls. Resp. at 16-25 (quoting 19 U.S.C. § 1514(c)(3)(B)).  Defendant moves to dismiss this action, arguing that plaintiffs' challenge to Customs' denial of the Protest is "premature" because the subject entries are unliquidated.  Def. Mot. at 4.  Accordingly, defendant maintains that the Court lacks jurisdiction over this action.  *Id*. at 1-2; Def. Reply Mem. at 1-2.  The court determines that it lacks subject matter jurisdiction over this case.

I.   **Whether the administrative refund constitutes a charge or exaction under 19 U.S.C § 1514(a)(3)**

A.   **Positions of parties**

Plaintiffs argue that Customs' "denial of BMB's administrative refund request amounts to the withholding of a *pre-liquidation* administrative refund to which BMB is entitled by law," and, therefore, constitutes a "charge or exaction" within the meaning of

**PUBLIC VERSION**

§ 1514(a)(3).  Pls. Resp. at 16.  Plaintiffs assert that the Court has held that a "charge"

has a broad definition including "an obligation or duty, a liability, an expense or the price

of an object; an entry in an account of what's due from one party to another."  *Id*. at 17

(quoting *Brother Int'l Corp. v. United States*, 27 CIT 1, 4, 246 F. Supp. 2d 1318, 1322

(2003)).  Plaintiffs note further that the Court has defined "exaction" as "the wrongful

demand for payment under color of official authority, where no payment is due; an

unjust compulsory levy."  *Id*. (quoting *Brother Int'l*, 27 CIT at 4, 246 F. Supp. 2d at

1322).

Plaintiffs argue that the U.S. of Court of Appeals for the Federal Circuit ("Federal

Circuit") and its predecessor, the U.S. Court of Customs and Patent Appeals ("CCPA"),

have held that "the denial of a requested refund constitutes an exaction within the

meaning of Section 1514(a)(3)."  *Id*. at 17-18 (citing *Eurasia Imp. Co. v. United States*,

31 CCPA 202, 211-212 (1944)).  Specifically, plaintiffs argue that the Federal Circuit

has held that the denial of a refund request for the Harbor Maintenance Tax ("HMT")

constituted a protestable decision under § 1514(a)(3).  *Id*. at 18 (citing *Swisher Int'l Inc.

v. United States*, 205 F.3d 1358, 1365-1367 (Fed. Cir. 2000)).

Plaintiffs argue further that the denied administrative refunds constitute an

"involuntarily tendered payment" because at the time of entry plaintiffs were required by

law to pay Section 232 tariffs.  *Id*.  Moreover, plaintiffs maintain that the Court has held

that "compliance with a statutory obligation requiring the payment of duties cannot be

viewed as a voluntary act."  *Id*. at 19 (quoting *General Motors Corp. v. United States*, 10

CIT 569, 574, 643 F. Supp. 1139, 1143 (1986)).  In sum, plaintiffs argue that Customs'

decision to deny the administrative refunds to which BMB was entitled because of the

exclusions, constitutes a "charge or exaction" and, as such, the decision is protestable

under § 1514(a)(3).  *Id.*

Defendant asserts that there are no "charges or exactions" at issue in this case.

Rather, defendant argues that plaintiffs' Protest relates to the "'classification and rate

and amount of duties chargeable' under § 1514(a)(2)."  Def. Reply Mem. at 10-12

(quoting 19 U.S.C. § 1514(a)(2)).  Defendant argues that "[p]ursuant to 19 U.S.C. §

1505(a), [BMB] was required to deposit the estimated duties . . . under headings

9903.80.02 or 9903.80.01."  *Id*. at 10-11.  Defendant argues that BMB filed PSCs

"seeking to change the applicable HTSUS classification provision . . . ."  *Id*. at 11.  As

such, defendant maintains that plaintiffs' Protest is "precisely a challenge to the tariff

classification of the merchandise; either duties are due at the *ad valorem* tariff rates

provided under headings 9903.80.02 and 9903.80.01, HTSUS, or they are not,

depending on the correct classification of the merchandise."  *Id*.

Defendant argues that this Protest is not distinct from other protests "involving

the classification and applicable rate of duty for any imported merchandise."  *Id*. at 12.

Specifically, defendant notes: "In all such protest cases, the importer must deposit the

estimated duties at the rate applicable under the HTSUS classification provision under

which the merchandise is entered, and in all such cases [Customs] has until liquidation

to fix the final classification and rate of duty."  *Id*. (citing 19 U.S.C. §§ 1505(a), 1500(b)-

**PUBLIC VERSION**

(d), 1514(a)(2)).  Defendant asserts that "an importer's deposit of estimated duties . . .

under the HTSUS classification . . . as required by law, is not an exaction."  *Id.* at 15

(citing 19 U.S.C. § 1505(a)).  Defendant argues further that if "'charges or exactions,'

under § 1514(a)(3), were interpreted to include estimated duty deposits collected in

accordance with the HTSUS classifications provided on the entry summary, . . . then

'charges or exactions' under § 1514(a)(3) would essentially subsume the separate

provision for protesting 'the classification and rate and amount of duties chargeable' . . .

thereby impermissibly rendering § 1514(a)(2) meaningless."  *Id.* at 11-12.

Finally, defendant argues that the administrative refunds are not exactions

because plaintiffs are not "'entitled by law' to pre-liquidation refunds."  *Id.* at 17 (citing

Pls. Resp. at 16).  Defendant notes that the statute requires Customs to issue refunds

"as determined on a liquidation or reliquidation."  *Id.* (emphasis omitted) (quoting 19

U.S.C. § 1505(b)).  In contrast, defendant asserts that "the statute authorizes [Customs]

to issue pre-liquidation refunds," but Customs is not required to do so.  *Id.* (citing 19

U.S.C. § 1520(a)(4)).  Defendant argues that Customs' exercise of its discretion under

the statute is not protestable.  *Id.* at 17-18.

**B.    Analysis**

Plaintiffs assert jurisdiction under 28 U.S.C. § 1581(a).  Compl. ¶ 5.  "[T]here are

procedural prerequisites to obtaining that jurisdiction," and "[s]ection 1514 provides

those prerequisites necessary to establish a valid challenge of a protest denial."

*Acquisition 362, LLC v. United* States, 45 CIT __, __, 517 F. Supp. 3d 1318, 1323

**PUBLIC VERSION**

(2021).  Specifically, § 1514(a) lists seven enumerated categories of decisions by

Customs that can be subject to protest, including "all charges or exactions" and "the

classification and rate and amount of duties chargeable."  19 U.S.C. § 1514(a)(2)-(3).

Plaintiffs argue that Customs' "refusal to effectuate GCX's Section 232

exclusions by denying BMB's administrative refund request constitutes a 'charge or

exaction' within the meaning of 19 U.S.C. § 1514(a)(3)."  Pls. Resp. at 16.  The Court

has defined a "charge" as "encompass[ing] a broad range of meanings including: an

obligation or duty, a liability, an expense or the price of an object; an entry in an account

of what's due from one party to another."  *Syva Co. v. United States*, 12 CIT 199, 202,

681 F. Supp. 885, 888 (1988) (citing West's *Law & Commercial Dictionary in Five*

*Languages* 237 (1985); *Webster's Third New Int'l Dictionary* 377 (1981); *Black's Law*

*Dictionary* 211 (5th ed. 1979)).[12]  Similarly, an "exaction" is "the wrongful demand for

payment under color of official authority, where no payment is due; an unjust

compulsory levy."  *Id.* (citing *Webster's Third New Int'l Dictionary* 790 (1981); *Black's*

*Law Dictionary* 500 (5th ed. 1979); *Carlingswitch, Inc. v. United States*, 85 Cust. Ct. 63,

66, C.D. 4873, 500 F. Supp. 223, 226-27 (1980), *aff'd* 68 CCPA 49, C.A.D. 1264, 651

F.2d 768 (1981))[13]; *see also Brother Int'l*, 27 CIT at 4, 246 F. Supp. 2d at 1322 (quoting

---

[12] The most recent edition of *Black's Law Dictionary* defines a charge as: "An encumbrance, lien, or claim" or a "[p]rice, cost, or expense <free of charge>."  *Charge*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[13]  The most recent edition of *Black's Law Dictionary* defines an exaction as: "The act of demanding more money than is due; extortion" or "[a] fee, reward, (footnote continued)

**PUBLIC VERSION**

*Syva Co.*, 12 CIT at 202, 681 F. Supp. at 888).  Plaintiffs assert that Customs' denial of

the administrative refunds, to which plaintiffs maintain BMB is entitled pursuant to the

Section 232 exclusions, constitutes an "involuntarily tendered payment."  Pls. Resp. at

18-19.  Accordingly, plaintiffs argue that Customs' decision constitutes a protestable

decision as to a "charge or exaction" under 19 U.S.C. § 1514(a)(3).  *Id.* at 19.

　　　　Plaintiffs argue that the Federal Circuit and its predecessor, the CCPA have held

that "the denial of a requested refund constitutes an exaction within the meaning of

Section 1514(a)(3)"; however, the cases cited by plaintiffs — *Swisher International, Inc.*

*v. United States* and *Eurasia Import Co. v. United States* — are inapposite.  *See* Pls.

Resp. at 17-18 (citations omitted).  In *Eurasia,* the CCPA determined that Customs'

denial of refunds *after* liquidation constituted an "exaction" protestable under the

statute.[14]  *Eurasia Imp. Co. v. United States*, 31 CCPA at 209-10 ("The transaction here

---

or other compensation, whether properly, arbitrarily, or wrongfully demanded."
*Exaction*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[14] In *Eurasia*, the CCPA examined an earlier version of § 1514 and held:

　　　It is our view that the statute by its very terms became retroactive from its
　　　effective date both as to the right to protest classification after liquidation
　　　subsequent to that date and as to the right to receive any refund of
　　　excessive duties resulting from a liquidation based upon reclassification.

*Eurasia Imp. Co. v. United States*, 31 CCPA 202, 210 (1944).  The Court noted further:

　　　There is, of course, no express provision authorizing a protest against the
　　　collector's refusal to refund excessive duties collected as a part of the
　　　estimated duties before liquidation, such as is expressly provided, for
　　　example, in the case of the collector's refusal "to pay (footnote continued)

**PUBLIC VERSION**

involved was not completed until the collector made liquidation.  Prior to that date there

was no opportunity for the transferee to protest or take action of any character (other

than giving notice which it did) to protect whatever of legal rights it may have had, nor

could the transferor have done so.").  In *Swisher*, the Federal Circuit determined that a

failure to refund the HMT constituted an exaction protestable under § 1514, *Swisher*

*Int'l, Inc.*, 205 F.3d 1358, 1369 (Fed. Cir. 2000); however, the Federal Circuit's holding

does not support directly plaintiffs' argument that importers are entitled to refunds prior

to liquidation.  The Federal Circuit in *Swisher* explained:

> In fact, it is not at all clear that refunds on import duties, which comprise the vast majority of the money collected by Customs, *would or could be requested outside of the bounds of the liquidation or reliquidation procedures*.  With regard to imports, most fees, including the HMT, are collected at liquidation.  Any fee collected at liquidation is considered merged with the liquidation.

*Id*. at 1368 n.8 (emphasis supplied) (citing *Thomson Consumer Electronics, Inc. v.*

*United States*, 23 CIT 586, 62 F. Supp. 2d 1182 (1999), *rev'd*, 247 F.3d 1210 (Fed. Cir.

2001)).

---

any claim for drawback."  That it is the duty of the collector to make such refunds, however, is so well understood that no citation of statutory provisions concerning it and judicial decisions based thereon is necessary.

*Id*. at 211-12.  The court notes that the interpretation by the CCPA was based on a previous version of the statute that did not include the exclusionary language for refunds under 19 U.S.C. § 1520 present in the current version of the statute.  *See* Tariff Act of 1930, ch. 497, title IV, § 514, 46 Stat. 734 (1940) (current version at 19 U.S.C. § 1514).

**PUBLIC VERSION**

Court No. 21-00186                                                                              Page 18

Decisions by Customs to issue refunds prior to liquidation are covered by 19

U.S.C. § 1520.  Section 1520(a)(4) provides that: "The Secretary of the Treasury is

authorized to refund duties or other receipts . . . [p]rior to the liquidation of an entry or

reconciliation, whenever an importer of record declares or it is ascertained that excess

duties, fees, charges, or exactions have been deposited or paid."  19 U.S.C. §

1520(a)(4).  Accordingly, § 1520(a)(4) provides Customs with the authority to issue pre-

liquidation refunds, but the agency is not required to do so.  *Id*.

In this case, after reviewing the PSC, Customs "determined that there was

insufficient information provided to indicate that the importation was within the scope of

the approved exclusion."  Pls. Resp. at Ex. 2, Attach. 10 at 1.  In other words, Customs,

acting within its discretion pursuant to § 1520, concluded that the agency could not

determine that the Section 232 exclusions applied to BMB's entries.  As such, Customs

could not "ascertain[] that excess duties, fees, charges, or exactions have been

deposited or paid" and did not issue the administrative refunds.  *See* 19 U.S.C. §

1520(a)(4); Pls. Resp. at Ex. 2, Attach. 10.

Plaintiffs assert that Customs "established a framework via several CSMS

messages to enable importers to file PSCs 'to receive refunds prior to liquidation of an

entry.'"  Pls. Resp. at 7 (emphasis omitted) (quoting Commercial Customs Operations

Advisory Committee (COAC) Intelligent Enforcement Subcommittee, *AD/CVD Working*

*Group Background Document* at 3 (July 15, 2020) (provided at Pls. Resp. at Ex. 1,

Attachment 6)).  Defendant argues that Customs' CSMS messages provide no such

**PUBLIC VERSION**

framework.  Def.'s Written Resps. to the Court's Questions for Oral Arg. ("Def. Resps.

Oral Arg.") at 4-5, ECF No. 41.  Rather, defendant maintains that "[t]he PSC ensures

that [Customs] has the relevant information at the time of liquidation; if the corrected

information submitted via PSC lowers the duties, a refund will be issued *upon*

*liquidation*, thereby averting the need to file a protest."[15]  *Id*.  Customs in its instructions

for retroactive refunds states:

> If a product exclusion has been granted, an importer of record (IOR) may request a refund by filing a corrective action with [Customs] by filing a post summary correction (PSC) for unliquidated entries or file a protest for entries that have liquidated but where the liquidation is not final and the protest period has not expired.

*See* CSMS # 42566154; Pls. Resp. at Ex. 1, Attach. 2.

The language of the CSMS message does not establish that importers who file a

PSC are entitled to pre-liquidation refunds; rather, the language of the message

---

[15] Defendant notes further that the "Federal Register notice announcing PSCs states that when a filer submits a PSC and [Customs] makes no further changes, 'the entry will liquidate' with the corrected entry data."  Def. Resps. Oral Arg. at 4.  The Federal Register notice states:

> For non-type 03 entries, when a filer changes the entry summary data via PSC, and [Customs] makes no further changes to that data, the entry will liquidate "no change" as entered.  A status of "no change" on the bulletin notice of liquidation will signify that [Customs] did not change the data submitted on the last accepted PSC.  A type 03 entry will not be liquidated until the Department of Commerce issues liquidation instructions to [Customs] covering that entry.

*Post-Summary Corrections to Entry Summaries Filed in ACE Pursuant to the ESAR IV Test* ("*Post-Summary Corrections*"), 76 Fed. Reg. 37,136, 37,138 (CBP June 24, 2011).

**PUBLIC VERSION**

indicates that, unless otherwise issued by Customs under § 1520, refunds of Section

232 duties are generally issued at liquidation.[16]  Further, plaintiffs have not exhausted

all administrative remedies.  Plaintiffs can file an additional PSC,[17] and, if, upon

liquidation, Customs does not issue the refund, plaintiffs may protest that decision under

§ 1514(a), and, if necessary, bring an action before the Court.

      Plaintiffs have failed to demonstrate that Customs' decision not to issue the

administrative refunds prior to liquidation constitutes a protestable decision as to

charges or exactions under § 1514(a).  It is undisputed that the subject entries are

---

[16] The court acknowledges that correspondence between plaintiffs' counsel and a
Customs officer may have led plaintiffs to believe that they were entitled to a refund of
Section 232 tariffs prior to liquidation.  The Customs officer explained:

    [[




        ]]

Pls. Resp. at Ex. 2, Attach. 11 at 6.

The miscommunication by Customs, while unfortunate, does not alter the agency's
discretion under the statute to decide whether to issue refunds prior to liquidation.

[17] The Federal Register notice announcing the creation of PSCs explains: "There are no
limitations to the number of PSCs that can be submitted for any one entry so long as the
PSC is not within the disallowed timeframe and all other requirements are met."  *Post-
Summary Corrections*, 76 Fed. Reg. at 37,137.

PUBLIC VERSION

unliquidated; therefore, plaintiffs are asserting that they are entitled to a refund of the

deposits made by BMB at the time of entry.  To interpret a "charge" or "exaction" to

include Customs' decision to not issue administrative refunds of deposits prior to

liquidation is contrary to the protest statute which excludes explicitly decisions by

Customs as to refunds under § 1520.  The statute states:

> *Except as provided in . . . section 1520 of this title (relating to refunds)* . . .
> any . . . decisions of the Customs Service . . .
>
> . . . .
>
> shall be final and conclusive upon all persons . . . unless a protest is filed in
> accordance with this section, or unless a civil action contesting the denial
> of a protest, in whole or in part, is commenced in the United States Court of
> International Trade . . . .

19 U.S.C. § 1514(a) (emphasis supplied).

Plaintiffs assert that the court in *Power-One Inc. v. United States*, 23 CIT 959, 83

F. Supp. 2d 1300 (1999), held that the exclusionary language in § 1514(a) cannot be

understood to mean that Customs' decisions under § 1520 cannot be protested.  Oral

Arg. Tr. at 42:6-43:18, ECF No. 40; Pls.' Reply Comments to Def.'s Written Resps. to

the Court's Questions for Oral Arg. ("Pls. Reply Oral Arg.") at 3-4, ECF No. 42 (citing

*Power-One Inc.*, 23 CIT at 962 n.11, 83 F. Supp. 2d at 1303 n.11).   Plaintiffs rely solely

on a footnote in *Power-One* in which the court explained:

> A cursory brief reading of § 1514 might indicate that a § 1520(d) petition
> denial is not a protestable final decision of Customs.
>
> . . . .

**PUBLIC VERSION**

The confusion dissipates when the consequences of such reasoning are examined.  If the opening clause of § 1514(a) excludes from finality, and therefore protestability, Customs decisions made under § 1520, then it also excludes decisions made under the other sections listed in that opening clause.  Those sections are 1501 (voluntary reliquidations), 1516 (petitions by domestic interested parties), and, formerly, 1521 (reliquidations on account of fraud).

23 CIT at 962 n.11, 83 F. Supp. 2d at 1303 n.11; *see* Oral Arg. Tr. at 42:6-43:18;

Pls. Reply Oral Arg. at 3-4.

The court does not find plaintiffs' argument compelling for two reasons.  First, the

court in *Power-One* examined Customs' denial of a post-entry NAFTA claim under §

1520(d).  *See Power-One Inc.*, 23 CIT at 959-60, 83 F. Supp. 2d at 1301-02.  Section

1520(d) states that Customs "may . . . *reliquidate* an entry to refund any excess duties

(including any merchandise processing fees) paid on a good qualifying under the rules

of origin set out in [the implementing legislation for various named free trade

agreements and 19 U.S.C. § 4531]."  19 U.S.C. § 1520(d).  The circumstance provided

for in § 1520(d) is distinct from Customs' exercise of its discretion to issue pre-

liquidation refunds of deposits at issue in this case.  Second, the Federal Circuit has

held consistently that 28 U.S.C. § 1581(a) "'provides no jurisdiction for protests outside

the[ ] exclusive categories' listed in 19 U.S.C. § 1514(a)."  *Sunpreme Inc. v. United

States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (quoting *Mitsubishi Elecs. Am., Inc. v.

United States*, 44 F.3d 973, 976 (Fed. Cir. 1994)).  This statement by the Federal Circuit

along with the clear exclusion of § 1520 refunds from § 1514(a) decisions subject to

protest supports the conclusion that Customs' decision to not issue an administrative

**PUBLIC VERSION**

Court No. 21-00186                                                                                          Page 23

refund for the Section 232 tariffs is not a protestable decision under § 1514(a), and,

therefore, the court does not have 28 U.S.C. § 1581(a) jurisdiction over this matter.

Finally, the court notes that at oral argument plaintiffs explained that they

protested Customs' decision in response to instructions by Customs to file a protest.

Oral Arg. Tr. at 10:23-11:22.  Indeed, in its e-mail explaining that there was "insufficient

information" to conclude that the entries were subject to the Section 232 exclusion,

Customs stated that if plaintiffs wished to "provide additional information, you may do so

via the protest process.  Your additional information can be reviewed and considered at

that time."  Pls. Resp. at Ex. 2, Attach. 10 at 1.  Moreover, when Customs denied the

protest, the agency provided the following information:

[[


                                                                                                  ]]

Pls. Resp. at Ex. 2, Attach. 13 at 1.  This unclear communication by Customs led

apparently to plaintiffs filing prematurely a protest, and, subsequently, this action before

the Court.  *See* Oral Arg. Tr. at 10:23-11:22.

As stated previously, as the subject merchandise remains unliquidated the

administrative process is incomplete.  Customs has not made a "final and conclusive"

decision as to a charge or exaction or any other decision within the seven categories

under § 1514(a).  Accordingly, Customs has not made a protestable decision that has

triggered the Court's jurisdiction, and the court dismisses the case for lack of subject

matter jurisdiction.

**PUBLIC VERSION**

## II.     Timeliness of plaintiffs' protest

Plaintiffs argue that their protest is timely under 19 U.S.C. § 1514(c)(3)(B).

Plaintiffs note that § 1514(c)(3)(B) provides that in circumstances where liquidation is

"inapplicable," the protest shall be filed with Customs within 180 days of the "date of the

decision as to which protest is made."  Pls. Resp. at 19-20 (citing 19 U.S.C. § 1514

(c)(3)(B)).  Plaintiffs maintain that Customs' decision to deny the administrative refunds

constitutes an "exaction," and, therefore, the decision is unrelated to the liquidation of

the 19 entries.  *Id.* at 22.  Accordingly, plaintiffs argue that "the timeliness of [the] protest

is governed by § 1514(c)(3)(B) because liquidation is 'inapplicable' to the exaction being

protested."  *Id*. at 19.

Defendant argues that 19 U.S.C. § 1514(c)(3)(B) does not apply because "the

essence of [p]laintiffs' challenge is to the classification and rate and amount of duties

chargeable for the merchandise in the subject entries, all of which will be finally

determined by [Customs] upon liquidation."  Def. Mot. at 10.  Accordingly, defendant

maintains that this action does not present any "circumstances where [the date of

liquidation or reliquidation] is inapplicable," and, as such, defendant argues that plaintiffs

can protest Customs' decision only after liquidation.  *Id*. (citing 19 U.S.C. §

1514(c)(3)(B)).

Section 1514(c)(3) states:

A protest of *a decision, order, or finding described in [19 U.S.C. § 1514(a)]*
shall be filed with the Customs Service within 180 days after but not before
—

      (A) date of liquidation or reliquidation, or

**PUBLIC VERSION**

> (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

19 U.S.C. § 1514(c)(3) (emphasis supplied).

The court concludes that Customs did not make a decision protestable under § 1514(a).  Therefore, the court does not address the parties' arguments as to the timeliness of plaintiffs' protest under § 1514(c)(3).

**CONCLUSION**

Gilda Radner and Chevy Chase were two of the original seven members of the Not Ready for Prime Time Players on Saturday Night Live.  The incomparable Radner wound up creating a gaggle of memorable characters, such as Roseanne Roseannadanna, Emily Litella and Lisa Loopner.  Here, as Litella (a hard-of-hearing elderly woman),[18] is an exchange she had with Chase in a Weekend Update segment on May 8, 1976.[19]

Chase (Anchor, in light colored blazer with wide lapels and wider yet tie): "Weekend Update recognizes its obligation to present responsible opposing viewpoints to our editorials.  Here with an editorial reply is Miss Emily Litella."

---

[18] Naomi Blumberg, *Gilda Radner*, ENCYCLOPEDIA BRITANNICA (May 16, 2022), https://www.britannica.com/biography/Gilda-Radner.

[19] Saturday Night Live, *Weekend Update: Emily Litella on Television Violins – SNL*, YOUTUBE (Aug. 31, 2017), https://www.youtube.com/watch?v=fZLeaSWY37I (NBC television broadcast May 8, 1976).

**PUBLIC VERSION**

Litella (Radner, hunched over, thick glasses, right palm pounding alternately the table and the air, pretending to read from a piece of paper): "What's all this fuss I keep hearing about violins on television?  Now, why don't parents want their children to see violins on television?   Why, I thought the Leonard Bernstein [mispronounced as "steen"] concerts were just lovely.  Now, if they only show violins after 10 o'clock at night, the little babies will all be asleep and they won't learn any music appreciation.  Why, they'll end up wanting to play guitar and bongo drums and go to Africa and join these rock and roll outfits.  And they won't drink milk!"  Fist pounding the table for emphasis.  "I say there should be *more* violins on television.  And less game shows."  Chase is tapping her left shoulder gently, seeking to interrupt.  "It's terrible the way they . . . ."  Turns to Chase.  "What?  What?!"

Chase: "Miss Litella, that's *violence* on television, not violins."  Making gesture with his thumb and index finger for a tiny violin.  "Violence," he repeats.  Smiles at her.

Litella: "Oh."  Puzzled look.  "That's different."

Chase: "Yes."

Litella: "Never mind."  Smiles sweetly.

* * *

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.  Judgment will enter accordingly.

**PUBLIC VERSION**

Court No. 21-00186                                                      Page 27

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated:   June 1, 2022
         New York, New York